GEORGE E. BENEDICT vs. HEIRS, REPRESENTATIVES AND CREDITORS OF CLARISSA DICKENS ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, JS.

Argued February 5th—decided March 5th, 1935.

*William Hanna,* for the appellant (plaintiff).

*Charles W. Murphy,* for the appellee (defendant Cassie Hunt).

BANKS, J. The plaintiff brought this action to quiet the title to certain real estate in the town of New Fairfield, and the defendant Cassie Hunt, the plaintiff's grantor, filed a cross-complaint seeking to have her deed of the property to the plaintiff set aside on the ground of fraud and misrepresentation. The court rendered judgment in her favor upon the cross-complaint and the plaintiff has appealed.

The following facts appear from the finding of the trial court: Cassie Hunt, hereinafter referred to as the defendant, is the only heir at law of her father, Thomas H. Conklin, who purchased the property in question, containing about one acre, in 1877 for $110. She lived with him upon the premises until the house thereon was burned, about fifty years ago. He died in 1903, and so far as appeared no administration was

ever taken out on his estate. The defendant since her marriage has lived about four miles from the property, which she had not visited for seven years prior to August, 1932. Prior to 1931 the Connecticut Light & Power Company flooded a large area, creating a lake known as Lake Candlewood which borders the property on the east. The creation of the lake greatly increased the value of the property which, on September 6th, 1932, was reasonably worth between $2500 and $3000. The defendant had general knowledge of the creation of the lake and that a cemetery located about a quarter of a mile from her property had to be moved because of the flooding of the same, but was ignorant of the fact that her property bordered upon the lake, and of the increased value thereof by reason of that fact. The plaintiff, who had lived in New Fairfield practically all his life, knew both of these facts. One Nevius had sold to the Power Company a small strip of the land, which he erroneously supposed belonged to him, for $10.

On or about September 1st, 1932, the plaintiff, who is a distant relative of the defendant by marriage, called at her house and asked her if she would sell the property. She asked him why he wanted it, to which he made no reply. He told her that Nevius had gotten $10 from the Power Company for a part of the land, and in reply to her inquiry as to what the property was worth said "not much," and offered her $10, to which she replied that she guessed she would let him have it. He told her to come to the town clerk's office on September 6th, and sign the deed. On September 6th the defendant had decided not to sell the property, and was about to go to the town clerk's office and so inform the plaintiff, when the latter and Nevius came to her house with the deed for her to sign. Defendant told plaintiff she had decided not to sell. He

asked her if she had ever paid any taxes on the property and she said "No." He told her that there must be a large amount of taxes due on the property and asked her if she could pay them and she said "No." She said she ought to have the $10 that Nevius had gotten. Plaintiff told her that Nevius didn't want to pay it back, and that he would give her $15 which would be better than nothing, and that the property was not worth any more than that to him. Defendant, believing that there was a large amount of taxes due on the property which she could not pay, and that the property was worth no more than $15, signed the deed. Defendant was inexperienced in business affairs, had been under the doctor's care for two years and was somewhat in need, the town having furnished her with medical care and medicines. No taxes were in fact at that time assessed against the property, of which fact both parties were ignorant. After plaintiff got the deed he did some work on the property, but just what he did or the reasonable cost of the work did not appear. In May, 1933, he sold a portion of the property, about sixty by one hundred feet, for $1200. The court found that the sum paid the plaintiff by the defendant for the property was grossly inadequate, that he had taken undue advantage of her, and that to allow him to benefit by the transaction would be unconscionable.

The trial court sustained the claim of the plaintiff that there was no confidential relationship between the parties which would entitle the defendant to relief on that ground in a court of equity, and his further claim that inadequacy of consideration alone was not a sufficient ground for setting aside the conveyance. Persons who are capable of managing their own affairs may sell their property for less than its value, and when the parties do not stand in a confidential relation a court of equity will not, in the absence of actual fraud, set

aside the sale for inadequacy of price alone. *Heming-way* v. *Coleman,* 49 Conn. 390. Though mere inadequacy of price may not be relied on as a ground of relief, the inequality of the bargain may be so great, the result so unconscionable, as to require but slight, if any, support from other inequitable features of the transaction, to justify a court of equity in setting it aside on the ground of fraud. "The doctrine is settled, by a consensus of decisions and *dicta,* that even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract, whether executed or executory. Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief." 2 Pomeroy, Equitable Jurisprudence (4th Ed.) § 927. "Equity may decree the rescission or cancellation of a contract or conveyance where such a gross inadequacy of consideration is shown as to shock the conscience, because in this case the disparity between the value of the subject and the consideration given for it is regarded as raising an irrefragable presumption of fraud, or (according to most of the authorities) as constituting in itself conclusive evidence of fraud." 1 Black, Rescission and Cancellation (2d Ed.) § 175.

In none of the numerous cases examined by us has there appeared a more startling discrepancy between the value of the property and the consideration paid than is here present. The inequality is so great that it is "impossible to state it to a man of common sense, without producing an exclamation at the inequality of it." Lord Thurlow, in *Gwynne* v. *Heaton,* 1 Bro. Ch. 1, 9. However, the trial court did not base its action in setting aside the conveyance upon the inade-

quacy of consideration alone, and it is unnecessary for us to determine whether it would have been justified in doing so. When gross inadequacy of consideration is accompanied by other inequitable incidents, such as misrepresentation, concealment, undue advantage taken of ignorance, or misplaced confidence, or the like, a court of equity will not hesitate to grant relief. 1 Black, Rescission and Cancellation (2d Ed.) § 171; 9 C. J. 1176, § 36; 1 Story, Equity Jurisprudence (14th Ed.) § 355.

The finding paints a picture of inequitable conduct on the part of the plaintiff which should bar him from retaining the benefit of his unconscionable bargain. With knowledge that defendant's property was now upon the shore front of Candlewood Lake, and that its value was thereby increased manyfold, of which fact the defendant was ignorant, he went to her house and importuned her to sell it. To her inquiry as to what it was worth, indicating her ignorance of its value and some reliance upon him to advise her, his reply "not much," coupled with his offer of $10, amounted to a representation that the land was practically worthless, and evinced his willingness, by taking advantage of his knowledge of a fact of which she was ignorant and by direct misrepresentation, to obtain the property for a merely nominal consideration. When he called at defendant's house the second time with the deed for her to sign, and was told that she had decided not to sell, his statement that there must be a large amount of taxes due on the property (which was not the fact) and his inquiry if she could pay them (which she answered in the negative) were well designed to induce her to again change her mind, in the fear that the property might not even be worth the large amount of taxes that might be due, and to accept the plaintiff's statement that the $15 which he then

offered her would be better than nothing, and that the property was not worth any more than that to him. Thereupon the defendant, believing that there was a large amount of taxes due on the property which she could not pay, and that it was worth no more than $15, conveyed to the plaintiff for the consideration of $15 property which was then worth at least $2500 to $3000. The mere statement of the transaction lays bare its unconscionable character.

Representations as to value are ordinarily matters of opinion and not actionable. Plaintiff's representation that this property was worth only $15 to him was not a statement of an opinion. He had no such opinion. He knew that the property was worth many times that amount. It was a statement of fact which he knew to be false. Such a gross misrepresentation of value, made under the circumstances here disclosed, is a fact and not an opinion, and is a fraudulent misrepresentation sufficient to support an action to set aside the conveyance. *Robert* v. *Finberg,* 85 Conn. 557, 562, 563, 84 Atl. 366. In that case a representation that a farm was worth $25,000 when it was worth only $5000, made as a part of a scheme to sell the property by men who knew its falsity, to an inexperienced person who did not know that it was false, was held to be such a fraudulent representation as would support an action to rescind the contract. In *Lavette* v. *Sage,* 29 Conn. 577, the defendant had fallen heir to property of the value of $7000, but was ignorant as to the character of the property and its value. Plaintiff sought him out to obtain a conveyance of the property, suppressed certain facts regarding the property and stated what in fact was not true, excited the fears of the defendant lest he lose the property by representing that there was danger of the will being set aside when he had no reason to suppose that the will

would be contested, and procured the conveyance of the property to him for $1000. We held that such course of conduct could have but one aspect in a court of equity and that, considering the ignorance of the defendant, the gross inadequacy of the price, and the deceptive representations made by the plaintiff, the conveyance of the property could not be sustained. We cite a few of the many decisions in other jurisdictions in which courts of equity have refused to permit one guilty of like inequitable conduct to retain the benefit of a bargain thus obtained. *Executors of Wintermute* v. *Executors of Snyder*, 3 N. J. Eq. 489; *Allore* v. *Jewell*, 94 U. S. 506; *Schwarz* v. *Reznick*, 257 Ill. 479, 100 N. E. 900; *Cleere* v. *Cleere*, 82 Ala. 581, 3 So. 107; *Tribou* v. *Tribou*, 96 Me. 305, 52 Atl. 795; *Marker* v. *Van Gerpen*, 39 S. D. 648, 166 N. W. 151; *Stephens* v. *Ozbourne*, 107 Tenn. 572, 64 S. W. 902; *Hyde* v. *McFaddin*, 140 Fed. 433. The trial court did not err in its judgment setting aside the deed from the defendant to the plaintiff.

The plaintiff claims that after the judgment setting aside the conveyance a hearing should have been had before a jury to determine the value of the improvements made by him upon the property. It does not appear that this claim was made in the court below, in fact that court has made the affirmative finding that no claim was made by either party that there were any issues involved which should be submitted to a jury. It does appear that plaintiff offered proof of work done by him upon the property, since it is found that such work was done, but he failed to prove what work was done, or what, if anything, it added to the value of the property.

There is no error.

In this opinion the other judges concurred.