CINAUDAGRAPH CORPORATION *v.* LIONEL B. CORNWELL.

MALTBIE, C. J., AVERY, JENNINGS, ELLS and DICKENSON, Js.

Argued June 2—decided July 16, 1942.

*Stanley P. Mead* and *Frederick H. Sanborn,* of the New York bar, for the appellant (defendant).

*Joseph L. Melvin,* for the appellee (plaintiff).

MALTBIE, C. J.   The plaintiff brought this action to secure the reformation of a contract between it and the defendant.   The case was referred to a state referee, and from the acceptance of his report and judgment thereon in favor of the plaintiff the defendant has appealed.   The report states the following basic facts: The plaintiff is a corporation engaged in the business of manufacturing patented articles.   Prior to May 27, 1935, the defendant had been engaged in building loud-speakers and had an application for a patent upon a loud-speaker pending in the Patent Office.   On the date mentioned, the parties entered into a preliminary arrangement for the manufacture of these articles (exhibit 1) and also signed an agreement for the employment of the defendant as consulting engineer upon a part-time basis for the period of one year.

On September 26, 1935, the parties entered into a further agreement (exhibit A) with reference to the manufacture of loud-speakers under the defendant's application for a patent which in terms canceled exhibit 1. Under this agreement the plaintiff was given the exclusive right to manufacture or to license others to manufacture under this patent and all additions and improvements to it, and the defendant was to receive substantial royalties; the plaintiff, if it deemed it inadvisable to continue manufacturing the articles, could terminate the contract on ninety days' notice.   On March 26, 1936, the parties executed a new agreement (exhibit B) which in terms canceled exhibit A and changed the provisions as to royalty payments to be

made to the defendant. On June 8, 1936, the parties executed a new employment agreement (exhibit 3) upon a permanent full-time basis with a provision that it might be terminated by either party upon two weeks' notice. Under this agreement the defendant agreed to assign to the plaintiff all inventions he made or had made while in its employment, with the exception of the patent covered in exhibit B, and he was to receive a salary of $96.15 a week, one-half of which was deemed to be "payment for inventions, processes, etc." On July 1, 1937, the defendant assigned to the plaintiff a patent which had been issued to him subsequent to that referred to in exhibit B and in which eighteen of the twenty claims were taken from the earlier patent.

The manufacture of loud-speakers was not a financial success and from the beginning the plaintiff suffered substantial losses. The defendant voluntarily agreed in writing to the postponement of the payment of most of the royalties due him under his contracts. The officers of the plaintiff and the defendant discussed this situation and as a result a new agreement (exhibit C) was entered into on February 24, 1938. This agreement, which purported to cancel the agreement of September 26, 1935, provided for the payment to the defendant of $1200 in cash in full settlement of all claims under that agreement. The exclusive license to use the first patent given to the plaintiff was to continue during the life of the patent provided the defendant continued in the plaintiff's employ, and, should he leave, the plaintiff would retain, for itself and its assignee, the right to manufacture, sell and use the products covered by the patent. Exhibit 3 was to remain in force but the exception in it of the patent referred to in exhibit B was stricken out. If the plaintiff went into bankruptcy, all its rights under

the patent would revert to the defendant. The agreement provided for no further royalties to be paid the defendant. The cash payment was made. The agreement which the parties intended to cancel was the agreement dated March 26, 1936. By mistake of the scrivener the agreement canceled was described as that of September 26, 1935, which had already been canceled by the agreement of March 26, 1936. The referee found that in order to express the true intention of the parties the dates in exhibit C should be changed accordingly.

The manufacture of loud-speakers at a loss was continued by the plaintiff until December, 1939, when it ceased and the plaintiff discharged the defendant. The continued operations of the plaintiff were in reliance upon its belief that exhibit C freed it of any obligations to pay the defendant any royalties. The defendant at no time after the execution of exhibit C, while he remained in the employ of the plaintiff, requested the plaintiff to pay him any royalties or notified it that he expected it to carry out any of the provisions of exhibit B. Except for the $1200 paid under exhibit C, the plaintiff has paid the defendant no royalties since March 26, 1936, when it paid him $250, the minimum royalty due him on that date.

The defendant filed a remonstrance in two parts. In this he did not ask to have any of these findings stricken out. In the first part he sought to have many facts added to the report as admitted or undisputed. In the second part he stated that the report did not contain all the facts necessary to enable him to present his claims or the court to render judgment, the facts referred to being those stated in the first part. The trial court made two minor additions to the report but, except for these, overruled the remonstrance. We cannot review that ruling. The evidence before the

committee is not in the record. In order for us to determine whether there were facts in evidence before the committee which were admitted or undisputed it is necessary that we have the evidence before us. *Ferguson* v. *Cripps,* 87 Conn. 241, 247, 87 Atl. 792, and see Practice Book, § 371; Conn. App. Proc., § 126; *Appeal of Cohen,* 117 Conn. 75, 82, 166 Atl. 747. The second part of the remonstrance was apparently intended to secure a recommittal of the report. A remonstrance upon this ground must also be accompanied by a transcript of the evidence before the referee or committee; Practice Book, § 173(b); *State* v. *Giant's Neck Land & Improvement Co.,* 118 Conn. 350, 356, 172 Atl. 861; and unless such evidence appears in the record, we cannot review a ruling of a trial court denying relief of this nature. Moreover, the rules provide that a trial court will not recommit a report unless it is satisfied that such a course is necessary to a just determination of the case; Practice Book, § 173(c); the decision rests in the discretion of the trial court; *Bowen* v. *Morgillo,* 128 Conn. 442, 448, 23 Atl. (2d) 719; and on this record we cannot hold that the trial court abused its discretion in refusing a recommittal. We cannot find error in the ruling of the trial court overruling the remonstrance.

Certain of the grounds upon which the defendant claims that the trial court committed error in entering judgment on the report require little discussion. That the plaintiff answered the remonstrance instead of demurring to it did not preclude the trial court from finding the remonstrance insufficient in law. The facts stated in the paragraphs of the remonstrance which were admitted in the plaintiff's answer to it were too immaterial to afford ground for relief to the defendant based upon the failure of the trial court to add them to the report. While the complaint

alleged and the referee's report found that the mistake in exhibit C was due to scrivener's error, the fair import of both is that, because of this initial error, exhibit C failed to express the intent of the parties owing to a mutual mistake on their part. The committee also found that this agreement was authorized by the plaintiff's board of directors and that the license agreement which "the parties" intended to cancel was the agreement dated March 26, 1936, and in the absence of further facts there is no basis upon which we can consider the claims of the defendant as to the effect of knowledge of the true situation on the part of one of the directors or, as bearing upon a mistake by the corporation, of an erroneous statement to its board of directors as to the contents of exhibit C. The trial court, in its memorandum of decision, did not rule that the burden to plead and prove that the plaintiff was guilty of such inequitable conduct as would bar it from relief in equity was upon the defendant, but was speaking of inadequacy of consideration and fraud as specific defenses to the action.

The defendant insisted in the trial court, and his basic argument here has been, that the plaintiff does not come into equity with clean hands. The general purport of his contention is that the plaintiff, by an appearance of generosity and fair dealing, gained his confidence while in fact it was destroying all of his rights in his inventions and getting them by devious means into its own possession. In the absence of additional findings of fact the record fails entirely to support any such claim. The defendant brought his invention to the plaintiff and, after a trial period, the latter agreed to manufacture it. The terms of the contracts in evidence show the high hopes of success entertained by both parties. The attempts to manufacture the loud-speakers were continued for over

four years under the personal supervision of the defendant. There is no hint in the record of any failure on the part of the plaintiff to put forth its best efforts. A yearly salary of approximately $5000 and something on his royalties were paid the defendant, all the rest of the royalty payments, except the last, being postponed with his consent because of his knowledge of the plaintiff's losses. In spite of all this, the operation resulted in continued and substantial deficits so that, in the end, the plaintiff dropped both the device and the defendant.

The defendant specifically claims that the consideration for exhibit C was so inadequate that equity should not give the plaintiff relief. The $1200 paid to the defendant upon the execution of exhibit C apparently fell far short of the royalties which he might then have claimed under exhibit B, and his discharge from the employment of the plaintiff left it and its assignee with the right, unless it became bankrupt, to continue to use the patent referred to in exhibit B so long as it existed, and in full ownership of the later patent, without any obligation to pay royalties to the defendant. But, as far as the record before us shows, the principal consideration moving to the defendant was that the plaintiff consented to continue its efforts to make the use of the patents a successful financial undertaking and to continue him in its employ at a salary of $5000, although subject to discharge on two weeks' notice. It may well be that he was willing to leave to the plaintiff, should he be discharged, the rights which it would have under the patents because of a belief that, if it could not make a financial success of their use, no one else could. In the absence of any showing upon this record of fraud, duress or like inequity, we cannot hold that there was such a

gross inadequacy of consideration as should move equity to stay its hand in granting the plaintiff relief. *Benedict* v. *Heirs of Dickens,* 119 Conn. 541, 544, 177 Atl. 715. The report found all of the facts necessary to secure a reformation of the contract; *Bryant Electric Co.* v. *Stein,* 95 Conn. 211, 214, 111 Atl. 204; no sufficient reason appears why the plaintiff should be barred of relief; and the judgment followed as a matter of course.

There is no error.

In this opinion the other judges concurred.