## STEPHENS *v.* OZBOURNE.

### (*Knoxville.* October 19, 1901.)

RESCISSION. *Clear case for.*

Where an illiterate negro, ignorant of the facts as to his title to property and of its value, is induced by a person having full knowledge of the facts, but intentionally suppressing them, to convey to such person real estate worth $1,000 for a consideration of $5.00, the vendor has a clear case for rescission for fraud. In such case the inadequacy of price is so gross as to shock the conscience and afford evidence of fraud. Besides, the suppression of facts by the purchaser constitutes fraud under the circumstances.

Cases cited: Wright *v.* Wilson, 2 Yer., 294; Birdsong *v.* Birdsong, 2 Head, 290; Coffee *v.* Ruffin, 4 Cold., 507; Hamilton *v.* Saunders, 3 Shan. Cas., 789; Mann *v.* Russey, 101 Tenn., 598; Talbot *v.* Manard, 106 Tenn., 69.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. JOSEPH W. SNEED, Ch.

FRANTZ & WRIGHT and McCROSKEY & PEACE for Stephens.

SANSOM, WELCKER & PARKER for Ozbourne.

Stephens v. Ozbourne.

CALDWELL, J. The bill in this cause was brought to annul and cancel a deed for fraud in procuring it. The Chancellor granted the relief sought and the Court of Chancery Appeals affirmed his decree.

The complainant, George Stephens, an ignorant old negro man, residing in the State of Georgia, executed the deed in question to the principal defendant, Mrs. M. M. Ozbourne, an intelligent white woman of Knoxville, Tenn., and thereby he conveyed to her, for the consideration of $5, a piece of real estate in Knoxville worth $1,000. The transaction, on the part of the vendee, was conducted by her agent, who, knowing the value of the property, its former ownership, and facts strongly indicating present ownership in the vendor, visited him in Georgia and brought the question of ownership and of sale to his attention simultaneously and for the first time; and thereupon, after confirmation in his own mind as to the identity of the true owner, the agent, upon the statement that the property was "worth some money if the right parties could be found," and without further disclosure induced the old darkey, who had no other information on the question of value or ownership, then and there to execute the deed as the "only living heir" of his father, who the agent knew really owned the lot at the time of his death many years before.

This condensed narration of the elaborate finding of facts by the Court of Chancery Appeals discloses two obvious reasons for the cancellation of the deed:

First, such gross inadequacy of price as to shock
the conscience and establish fraud, and, second, such
suppressive and misleading conduct on the part of
the vendee's agent as, under the circumstances, was
fraudulent in itself; and when the two things
are combined the fraud becomes absolutely over-
whelming.

It is everywhere agreed that simple inadequacy
of consideration, a mere undervaluation without
more, raises no presumption of fraud, nor affords
any reason for the avoidance of the contract by
rescission, cancellation, or otherwise; but when the
disparity between the true value of the thing sold
and the price paid, or to be paid, reaches the ex-
tremity just indicated; or when the situations of the
contracting parties are, for any reason, so unequal
as to give one a great advantage, which, through
nondisclosure and deception, he makes available to
the detriment of the other; or when even a less
difference as to consideration and less inequality in
environments conspire together in producing a hard
bargain, a court of equity will be prompt to give
the fullest measure of relief on the ground of
fraud.

After saying that inadequacy of consideration is
not, of itself, a distinct doctrine of relief in equity,
Judge Story continues: "Still, however, there may
be such an unconscionableness or inadequacy in a
bargain as to demonstrate some gross imposition or
some undue influence, and in such cases courts of

Stephens *v.* Ozbourne.

equity ought to interfere upon the satisfactory ground of fraud. But then such unconscionableness or such inadequacy should be made out as would (to use an expressive phrase) shock the conscience, and amount in itself to conclusive and decisive evidence of fraud. And where there are other ingredients in the case of a suspicious nature, or peculiar relations between the parties, gross inadequacy of price must necessarily furnish the most vehement presumption of fraud.'' Story's Eq. Jur., Sec. 246.

The same language (omitting the last sentence) is used by the Supreme Court of the United States in *Eyre* v. *Potter*, 15 How., 60.

Mr. Pomeroy says: ''Although the actual cases in which a contract or conveyance has been canceled on account of gross inadequacy merely, without other equitable incidents, are very few; yet the doctrine is settled by a concensus of decisions and *dicta* that, even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience and furnishes satisfactory and decisive evidence of fraud, it will be sufficient ground for canceling a conveyance or contract whether executed or executory.'' 2 Pom. Eq. Jur., Sec. 927.

Though of no special importance in the decision of the present case, it should be observed in passing that Mr. Pomeroy substitutes the word ''satisfactory'' for the word ''conclusive,'' used by Judge

Story in the phrase, "conclusive and decisive evidence of fraud," the reason for the substitution being given at length in a note on the next page.

In Sec. 928, Mr. Pomeroy further says: "If there is nothing but mere inadequacy of price, the case must be extreme in order to call for the interposition of equity. Where the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents, the relief is much more readily granted. . . . When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances combined with inadequacy of price may easily induce a Court to grant relief defensive or affirmative."

The general principles thus announced by these and other distinguished authors, and applied by this Court in *Wright* v. *Wilson*, 2 Yer., 294; *Birdsong* v. *Birdsong*, 2 Head, 290, 294; *Coffee* v. *Ruffin*, 4 Cold., 507; *Hamilton* v. *Saunders*, 3 Shann. Cas., 789; *Mann* v. *Russey*, 101 Tenn., 598; *Talbot* v. *Manard*, 106 Tenn., 69, and elsewhere, are so thoroughly established in English and American jurisprudence that it would, indeed, be a work of supererogation to discuss, or even cite, the multitude of adjudged cases in which one or more of them have been the basis of equitable relief. A large

array of the cases is found in a critical note in 1 Am. & Eng. Dec. in Eq., 202 to 204 inclusive.

The transaction developed in the present case will stand none of the tests suggested, but inevitably falls before at least two of them. It unmistakably comes under condemnation for the grossest inadequacy of price—$5, for property worth $1,000—and also for the suppressive and misleading statement that the property was "worth some money if the right parties could be found," when the agent making that statement and getting the benefit for his principal knew the true value, and that he was addressing the right party, and that the latter was an ignorant old negro, with only such information in reference to the ownership and value of the property as he, the agent, had importated.

Lord Thurlow, in the oft-quoted case of *Gwynne* v. *Heaton*, 1 Bro. Ch., 1–9, defines the inadequacy of price which in and of itself will establish fraud and justify relief, as follows: "An inequality so strong, gross, and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it." The present transaction completely fills the requirements of that very extreme definition. Land worth $1,000 bought for $5, or at one-half of one per cent. of its value! What man of common sense, upon hearing the statement, would not be forced to exclaim at the "inequality" and also at the *iniquity* of it.

23 P—37

In the early case of *Wright* v. *Wilson*, 2 Yer., 294, this Court set aside a sale for gross and shocking inadequacy of price when land worth $500 or $600 was sold for $50, making an inequality of ten or twelve to one. That case, the Court remarked, fell within the principle announced by Lord Thurlow, in *Gwynne* v. *Heaton*, *supra*, and applied in other English cases, where the disproportion was as one to two and as four to five respectively.

It is of no consequence, so far as the result is concerned, that this vendee had no personal connection with this purchase. What she did by her agent she did by herself in legal contemplation. His acts, for the purpose of this litigation, are imputable to her in the fullest sense. She cannot deny legal responsibilty for those acts and at the same time hold the fruits of them.

Affirm and remand for an account, in which the complainant will be charged with the $5, all proper taxes paid by the vendee, and with permanent improvements if any, by her, and credited by rents and profits.