**SECURITY FEDERAL SAVINGS AND LOAN ASSOCIATION OF NASH-VILLE, Plaintiff/Appellee,**

v.

**RIVIERA, LTD., a Tennessee limited partnership, Jack W. Redditt, Wilson Pike Associates, Mickey J. Ridings and Jack W. Redditt Co., Inc., Defendants/Appellants.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 23, 1992.

Permission to Appeal Denied by
Supreme Court June 1, 1993.

As Corrected Sept. 16, 1993.

Sam J. McAllester, III, Nashville, for plaintiff/appellee.

Alfred H. Knight, Alan D. Johnson, Nashville, for defendants/appellants Jack W. Redditt and Jack W. Redditt Co., Inc.

Phillip L. Davidson, Nashville, for defendant/appellant & third-party plaintiff Mickey J. Ridings.

H. Naill Falls, Jr., Nashville, for third-party defendants RRY, Thomas D. Robinson and Andrew Robinson.

## OPINION

CANTRELL, Judge.

This action involves an attempt by the purchasers of an apartment complex to avoid the operation of the purchase agreement because: (1) the agreement was procured by fraud; or (2) because one of the sellers violated a fiduciary duty to the purchasers. The chancellor enforced the agreement. We think the evidence preponderates against the chancellor's findings on the issues involving the fiduciary relationship. We, therefore, reverse and dismiss all claims of the sellers against the purchasers arising out of the agreement.

### I.

Tom Robinson is a Nashville businessman, with a degree in engineering from Vanderbilt University. Along with other investments in real estate partnerships, securities, and a trucking company, he owned a major share of Aquarius, a business that manufactured bathroom fixtures. Mickey Ridings, an accountant and former Internal Revenue Service auditor, is also a licensed attorney. He specializes in financial planning. In the late 1970s Mr. Ridings started providing advice to Mr. Robinson's companies on pensions and employee benefits. He prepared corporate documents, brought the minutes up to date, and became the designated agent for the corporation running the trucking company.

Later Mr. Ridings became more involved in Mr. Robinson's personal affairs. He reviewed the Robinsons' personal income tax returns and represented them in negotiations with the IRS. On June 8, 1986, Mr. Robinson and his wife signed a form designating "Mickey J. Ridings, Attorney" as their attorney-in-fact to negotiate with the IRS concerning their individual returns for the years 1973 through 1985. Mr. Ridings completed that work and negotiated an agreement with the IRS. For some of the services Mr. Ridings billed the Robinsons on an invoice from the law firm with which Mr. Ridings was associated.

In 1987 Mr. Robinson sold his interest in Aquarius and incurred a large tax liability for the gain realized on the sale. Early in 1988 Mr. Ridings proposed to Mr. Robinson that RRY, a partnership in which Mr. Robinson owned a 99% interest, purchase Riviera, Ltd. so that Mr. Robinson could take advantage of Riviera's losses and reduce the tax burden generated by the sale of Aquarius.

Riviera, Ltd. was a limited partnership that owned an apartment complex. Mr. Ridings and Jack W. Redditt were the general partners of Riviera, Ltd. and were personally obligated on the partnership debt. Mr. Ridings prepared a statement in his own hand showing the advantages Mr. Robinson would derive from the purchase (primarily how Riviera's losses in 1987 would be a benefit to Mr. Robinson) and how the acquisition would mesh with Mr. Robinson's other investments.[1] Significantly, the figures were based on a fair market value of the Riviera property ranging from $2,500,000 to $2,700,000 and included an advantage to be gained from purchasing Mr. Ridings' and Mr. Redditt's limited shares, showing the purchase price for the limited shares as a "management fee."[2] The key to the whole transaction

---

1. Mr. Ridings denies showing this analysis to Mr. Robinson as part of the inducement for entering into the purchase agreement. Mr. Robinson, however, says the figures in the statement were communicated to him through the statement or something similar.

2. Apparently Mr. Ridings devised the issuance of the limited partnership interests to himself and Mr. Redditt at no cost as part of the overall plan to sell Riviera to Mr. Robinson. The partnership agreement was amended to reflect their limited interests early in 1988 at about the same

was the assumption that the transfer could be backdated to January 1, 1987, in order to offset the gain Mr. Robinson had in that year.

Mr. Ridings gave the details to Jim Price, a Nashville attorney, who drew up the agreement. When Mr. Robinson arrived on the morning of the closing, Mr. Price asked him if he had consulted with a lawyer about making the sale retroactive to January 1, 1987. Mr. Robinson replied that he had talked to Mr. Ridings about it and he had confidence in Mr. Ridings' advice. Later, in the meeting with all the parties present, Mr. Price questioned Mr. Ridings about the retroactivity feature. Mr. Ridings explained how it worked and that there would be no problem with it.

The agreement provided, in substance, that RRY would purchase the general partnership interests of Mr. Ridings and Mr. Redditt and hold them harmless for any obligations as general partners. In another section of the agreement, RRY specifically agreed to hold Mr. Ridings and Mr. Redditt harmless for two mortgages to Security Federal in the principal amount of $490,000. In exchange for a cash payment of $50,000 and a note for $75,000, Mr. Ridings agreed to convey his limited partnership interest to RRY. Mr. Redditt agreed to convey one and one-fourth of his two limited partnership units on the same terms.

At about the same time, Mr. Ridings filed an application for an extension of the time for filing the Robinsons' 1987 tax return. The application was accompanied by a check from Mr. Robinson in the amount of $300,000, the amount Mr. Ridings calculated would be due after taking Riviera's losses into account.

In 1989 Mr. Robinson learned that he would not be able to claim the 1987 losses from Riviera and that the complex was not worth what he had been led to believe. On May 4, 1989, he wrote a letter to Mr. Ridings tendering Riviera back and demanding that the transaction be cancelled. Mr. Ridings and Mr. Redditt refused to take the

time Mr. Ridings was putting the deal together

property back. Subsequently, the property was sold at a foreclosure sale for $420,000.

This litigation began as a collection action against Mr. Ridings, Mr. Redditt, and Jack W. Redditt Co., Inc. on their guaranties of the two loans to Security Federal. The original defendants cross-claimed against RRY, Mr. Robinson and his son Andrew Robinson, the general partners of RRY. After a bench trial below, the chancellor held that Mr. Robinson had not been defrauded by Mr. Ridings, that there was no fiduciary relationship between them at the time of the sale, and that Mr. Ridings had not profited from the transaction. Accordingly, the chancellor granted Mr. Ridings, Mr. Redditt, and Jack W. Redditt Co., Inc. judgment over against the Robinsons and RRY for the amounts owed Security Federal and also gave Jack W. Redditt Co., Inc. a judgment on the $75,000 note given by RRY at the Riviera closing.

## II.

We will address the fraud claim first. Mr. Robinson says that he was induced to enter into the transaction because of Mr. Ridings' fraudulent misrepresentations concerning the value of the property and the ability to take advantage of Riviera's 1987 losses. We think all the parties would concede that the representations concerning the tax benefits turned out to be false. Although the appellees assert that Mr. Robinson failed to prove the value of the property as of the date of the sale, the proof does fairly establish that the property was worth far less than the $2,500,000 to $2,700,000 represented by Mr. Ridings.

False representations alone, however, will not affect the validity of a transaction. *See Winstead v. First Tennessee Bank,* 709 S.W.2d 627 (Tenn.App.1986). The purchaser must have relied on the misrepresentations, *Holt v. American Progressive Life Ins. Co.,* 731 S.W.2d 923, 927 (Tenn.App.1987), and the reliance must have been reasonable under the circumstances. *Pakrul v. Barnes,* 631 S.W.2d 436, 438 (Tenn.App.1981).

to transfer the apartment complex to RRY.

██ If this were an arm's length transaction, we do not think Mr. Robinson could claim that his reliance on the representations about the property's value and the tax consequences was reasonable. He is a well-informed and sophisticated businessman accustomed to regarding such hyperbole with a jaundiced eye. Concerning the tax consequences of the sale, Mr. Robinson was actually warned by Mr. Price to obtain independent advice before signing the agreement. Moreover, the representations about the property's value had so little substantive underpinning that one much less astute than Mr. Robinson should have been suspicious.

Under these circumstances we do not think Mr. Robinson has made out a case on the basis of Mr. Ridings' fraudulent representations.

### III.

### A.

It is another matter, however, if the transaction was not at arm's length. As Justice Cardozo said in his famous quote in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928):

> "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

*Id.* at 464, 164 N.E. at 546.

It would be difficult to find a legal principle that enjoys a wider application. In *Turner v. Leathers*, 191 Tenn. 292, 232 S.W.2d 269 (1950), the Supreme Court of Tennessee quoted Pomeroy's *Equity Jurisprudence*, 5th Ed., Vol. 3, § 956, p. 792:

> Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding

party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no confidential relation had existed.*

*Id.* at 298, 232 S.W.2d at 271 (emphasis in original).

This same principle applies to the whole reach of confidential and fiduciary relationships: trustee and beneficiary, attorney and client, confidential friend and adviser. *Id.; See also Miller v. Proctor*, 24 Tenn. App. 439, 446, 145 S.W.2d 807, 811 (1940).

In *Bayliss v. Williams*, 46 Tenn. (Cold.) 440 (1869), the Supreme Court applied the same rule to a relationship founded on trust and confidence alone without any contractual obligations. The court said:

> Though Williams was not, by employment for compensation, their attorney or agent, he put himself in that relation by reason of friendship and gratuitous service proferred by him, and accepted by them, and of confidence upon and by them in him; ....

*Id.* at 442.

### B.

██ We think it is inescapable that Mr. Ridings was in a position of trust and confidence with respect to Mr. Robinson. Even the most astute business people are not experts on every aspect of their trade. They rely on the advice of skilled professionals—especially in the maze of regulations presided over by the IRS. Although Mr. Ridings seeks to avoid a finding of a fiduciary relationship by showing that he was not acting as Mr. Robinson's attorney at the time of the Riviera transaction, it is not necessary to show employment to perform services connected with the transaction. *See Cultra v. Douglas*, 60 Tenn.App. 116, 444 S.W.2d 575 (1969); *Berke v. Chattanooga Bar Ass'n.*, 58 Tenn.App. 636, 436 S.W.2d 296 (1968). Nor is it necessary to show employment of any sort at the precise time of the transaction. *See Bayliss v. Williams*, 46 Tenn. 440. Not many attorney-client relationships involve continuous day-to-day legal obligations, but the relationship of trust and confidence reaches

across the gaps in actual employment and endures until it is clearly terminated.

In addition, Mr. Ridings overlooks the fact that the same principles of fiduciary duty apply to other relationships such as that of confidential friend and adviser. The proof clearly shows that as to his personal taxes, Mr. Robinson relied upon the advice of Mr. Ridings.

Considering all the evidence in this case we are of the opinion that the evidence preponderates against the chancellor's finding that no fiduciary relationship existed between Mr. Ridings and Mr. Robinson. Rule 13(d), Tenn.R.App.Proc.

### C.

Transactions between persons in a confidential relationship are not automatically invalid. *Miller v. Proctor*, 24 Tenn. App. 439, 446, 145 S.W.2d 807, 811. The relationship of trust and confidence between persons in a fiduciary relationship, however, commands the close attention of the courts to the fairness of any transaction between them. The law raises a presumption that the transaction is invalid and the evidence required to overcome the presumption is determined by the circumstances of each case. *Williams v. Jones*, 54 Tenn.App. 189, 207, 388 S.W.2d 665, 673 (1963). The factors which are important in determining whether a transaction is fair include: (1) whether the fiduciary made a full and frank disclosure of all relevant information within his possession; (2) whether the consideration was adequate; and (3) whether the principal had independent advice before completing the transaction. *McFail v. Braden*, 19 Ill.2d 108, 118, 166 N.E.2d 46, 52 (1960).

We are of the opinion that Mr. Ridings has failed to show that the transaction was fair. In fact, the proof demonstrates that the agreement was decidedly unfair to Mr. Robinson. Although Mr. Ridings maintains that he did not profit from the transaction, and the chancellor so found, we think the evidence clearly preponderates

against that finding. Mr. Ridings got out from under the liability for the partnership debt, which in itself was a substantial benefit. By the terms of the agreement, he was also to receive $125,000 for his limited partnership interest which cost him nothing. The property was worth substantially less than the value represented to Mr. Robinson, and, when the plan to reap a tax benefit failed, most of the consideration for the transaction vanished.

### IV.

The appellees maintain that, even if Mr. Robinson is correct, he cannot rescind the agreement because the parties cannot be restored to their former positions. This is not an action, however, for rescission. The unconscientious conduct of Mr. Ridings is raised as a defense to the enforcement of the agreement. "[W]hen a fraudulent transaction is sought to be enforced in the courts, the defendant may set up the fraud as either a complete or a partial defense, ... or else in mitigation of damages, or as the ground for recoupment or counterclaim." 37 Am.Jur.2d *Fraud and Deceit* § 340. When the obligees sought to enforce the indemnity provisions and the Redditt Corporation sought to collect the $75,-000 note called for in the agreement, Mr. Robinson and RRY could, without observing all the formalities required for rescission, defend the action by showing that the agreement was procured by fraud or inequitable conduct.

If Mr. Ridings cannot enforce the purchase agreement against RRY, does that disability extend to Mr. Redditt and to Jack W. Redditt Corp., Inc.?

It appears from the record that Mr. Ridings was the agent for both Mr. Redditt and the corporation in negotiating the Riviera sale. Mr. Redditt testified that Mr. Ridings called him early in 1988 and said that he might have a buyer for the project on terms that would get his (Mr. Redditt's) money back.[3] Mr. Redditt told him to pro-

---

3. Mr. Redditt had made a $200,000 loan to the partnership for which he expected to be repaid. He had not invested any money beyond that.

ceed on that basis, and Mr. Ridings worked out the details.

 An agent is simply "[o]ne who undertakes to transact some business, or to manage some affair, for another, by the authority and on account of the latter, and to render an account of it." *Miller v. Insurance Co. of North America*, 211 Tenn. 620, 625, 366 S.W.2d 909, 911 (1963). Mr. Ridings' relationship with Mr. Redditt and the corporation meets that definition.

The principal is liable for the fraudulent acts of his agent, committed within the course and scope of the agent's employment, in procuring an agreement on the principal's behalf. *Franklin v. Ezell*, 33 Tenn. 497 (1853). In that case the court stated:

> It is equally clear that the fraud of an authorized agent will avoid a contract entered into by him in behalf of his principal. Although the misrepresentation may have been unauthorized, yet, if the principal ratified the contract, he will be bound thereby, for he cannot make the contract his own by availing himself of its benefit, and at the same time avoid being responsible for the fraud which forms the basis of it. He must adopt or reject the contract *in toto*.

*Id.* at 500–501.

In *Stephens v. Ozbourne*, 107 Tenn. 572, 578, 64 S.W. 902, 903 (1901), the court said the fact that the principal did not know of the fraud or sharp dealing was of no consequence.

The question becomes whether the same rules apply in a case where the agent obtains an advantage for himself and his principal through the abuse of a fiduciary relationship. Although there does not appear to be any authority on this point in Tennessee, vicarious liability for the breach of the agent's fiduciary duty to a third party has been recognized by the federal court in one of our sister jurisdictions. *See John v. Robbins*, 764 F.Supp. 379, 396 (M.D.N.C. 1991). We can see no reason why the results in this case should be different from where an agent commits fraudulent acts. In either case, the principal is seek-

ing to enforce a contract procured through the tortious acts of his agent.

We conclude, therefore, that Mr. Ridings' acts may be used as a defense to the claims of Mr. Redditt and his corporation based on the Riviera sale agreement.

The judgment of the court below against Mr. Robinson, his son, and RRY, are dismissed. The cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to third-party plaintiffs and appellees, Mickey J. Ridings, Jack W. Redditt and Jack W. Redditt, Co., Inc.

TODD, P.J., and KOCH, J., concur.