Jerry LOVEDAY, et ux.,
Plaintiffs–Appellees,

v.

Joseph BARNES, et al., Defendants–
Appellants.

Court of Appeals of Tennessee,
Eastern Section.

June 20, 1995.

Permission to Appeal Denied by
Supreme Court Oct. 30, 1995.

Jerry K. Galyon, Galyon & Stokes, Sevierville, for Plaintiffs–Appellees.

John B. Waters, III and Christina C. Grey, Long, Ragsdale & Waters, P.C, Knoxville, for Defendants–Appellants.

## OPINION

FRANKS, Judge.

This is the second appeal of this case, and all of defendant's issues essentially relate to the amount of the judgment that should be entered against defendant.

This action arises from the breach of a contract for sale of real estate, and upon the first appeal we remanded to the Trial Court to fix damages in accordance with our opinion. The law of the case from the first appeal is that the real estate agent was the agent of the plaintiffs and the Trial Court was directed to fix damages for the breach of contract, the measure stated as the "difference in the contract price which the Barnes agreed to pay for their property and the fair market value of the property at the time of the breach of contract". Also, the Trial Court was directed to fix special damages based upon the principles announced in *Turner v. Benson*, 672 S.W.2d 752 (Tenn.1984).

▮ After hearing further evidence, the Trial Judge entered judgment based upon his memorandum, which in pertinent part said:

From the entire record in this case, and pursuant to the instruction of the Court of Appeals, the Court finds that plaintiffs are entitled to judgment against the defendants in the amount of $39,500.00 for breach of contract relative to the real property, to special damages of $15,593.47 and prejudgment interest from February 1, 1987 through and including May 21, 1991, together with post-judgment interest thereafter until the judgment is fully paid.

Defendant first argues that the Trial Court erred in awarding plaintiffs $39,500.00 in general damages. The finding comes to this Court with the presumption of correctness,

unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d). Plaintiff and appraisers testified to the value of the property, which opinions ranged from no difference to the amount awarded by the Trial Court. The Trial Judge heard and observed the witnesses, and we cannot say that the evidence preponderates against his judgment on this issue.

▮ Next, it is insisted the Trial Court erred in awarding plaintiffs special damages. As noted, we held that plaintiffs were entitled to special damages based on *Turner*, and the issue before us is whether the special damages come within the *Turner* rule. The rule in *Turner* says that the vendor may recover special damages, if any, that arise out of the breach of contract in order to compensate the vendor for any loss or injury actually sustained by reason of the vendee's breach. These special damages, though, must be within the reasonable contemplation of both parties at the time the contract is made. *Turner, Id.*, at 754–55. The pertinent circumstances of the transaction were detailed in our prior opinion, which we repeat here for purposes of analyzing the special damages award:

In January, 1987, the Plaintiffs–Appellants, Jerry Loveday and wife, Sharon Loveday, entered into a contract with Defendant–Appellee Joseph L. Barnes to sell him their residence in Gatlinburg for $195,000. Mr. Barnes made a $10,000 deposit of earnest money with Defendant Whaley Real Estate Company, which was acting as the real estate broker through its agent, Defendant Sandy Huskey. As pertinent here, the contract provided the sale was to be closed on March 1. The contract also provided: "Price to be $195,000.00; $185,000.00 to seller; commission of $10,000.00. Seller may live in Joe Barnes' LeConte Towers Condominium # 206 for 6 months from date of closing; Loveday to pay electric bill and maintenance fee on condominium. Condominium to be available to show for sale by appointment."

. . . . .

During the first week in February Mr. Barnes called Ms. Huskey and asked her

to set up a meeting between him and the Lovedays. That meeting was held on February 11. Although there is considerable dispute as to what was said and not said by the parties at that meeting, the following pertinent events occurred. Mr. Barnes told the Lovedays he would not be able to let them move into his LeConte Towers condominium as provided in the contract because divorce proceedings had been started between him and his wife and she would not move out of the condominium. He also told the Lovedays that he needed to move into their house prior to the March 1 closing date. He also told them that, as evidence of his good faith, he would be willing to put up a substantial amount of additional earnest money on the purchase price of the property. There were also discussions relating to Barnes's paying the rent of the Lovedays if they would find an apartment and move out of the residence. It was agreed the Lovedays would look for an apartment, which they did, and found one. They told Ms. Huskey they had found an apartment and she so informed Mr. Barnes. He gave Ms. Huskey $20,000 additional earnest money. He also gave her $900 which was to be applied on Lovedays' rent or moving expenses. The Lovedays moved out of the house immediately and Mr. Barnes moved into the house the same day.

The Chancellor relied on a list of special damages compiled by the plaintiff in making his award. Plaintiff listed as special damages fees for connecting utilities in the apartment and upon returning to his residence, which totalled $173.80. We find these reasonable, and within the contemplation of the parties under the circumstances of this case. Plaintiff also testified to damages for repairs and replacement caused by defendant, who occupied the house for a short period of time, which total amounted to $437.25. We find this to be a proper item of special damages. Plaintiff testified that by virtue of the sale he was required to pay off an interest free T.V.A. energy package loan which amounted to a loss of bargain for the use of monies over a period of years which he calculated the beneficial interest to approximate $1,088.00. We find this to be a proper item

of special damages under the *Turner* rule. Plaintiff also testified that he was required to purchase insurance in the apartment which he rented in the amount of $262.00, but this item would not be within the contemplation of the parties. Next, he claims three months house payments, which likewise, we conclude are not a proper item of damages. Also, he claimed that as a practical matter he was required to sell new bedroom and dining room suites when he moved to the apartment, and upon reoccupying his house he had to buy new furniture, claiming a difference of $4,541.30. These transactions we conclude were not within the contemplation of the parties. Further, he claims rent payments on the apartment for the rental period in the amount of $1,700.00 (he testified he had to pay a lump sum to get out of the lease) which we find to be within the contemplation of the parties, as well as moving expenses for the return to his house in the amount of $1,986.50. The special damages awarded by the Trial Court are modified and reduced to $5,385.55.

■ Next, defendant argues the Trial Court erred in failing to credit defendant with the earnest money payment and other payments made pursuant to the contract. The defendant had paid $30,000.00 as earnest money or advance payment to plaintiffs' real estate agent, and insists that he is entitled to a credit on the judgment claimed against him by plaintiffs. First, we note that the issue of who was entitled to the $30,000.00 was before the Trial Court upon remand. Plaintiffs assert that the agent misappropriated the earnest money to her own benefit, without knowledge, permission or consent of either of the plaintiffs or defendant, and that defendant had the burden of showing "Lovedays, explicitly or implicitly permitted the unauthorized conversion of monies by Huskey, that they knew or had knowledge or should have taken action to prevent the theft". We cannot agree with this premise. The general rule is well stated in 3 Am.Jur.2d § 278:

Payment made to an agent having authority to receive or collect payment is equivalent to payment to the principal himself; such payment is complete when the money is delivered into the agent's hands, and is a

discharge of the indebtedness owing to the principal, even though the agent misappropriates the money, or fails to turn it over to the principal. This is true, whether the agent has the express authority to collect, whether his authority is implied, is incidental to the agency transaction, or whether it arises from the fact that the principal has held the agent out as having apparent authority to collect and the debtor has relied upon such appearance of authority.

*Accord Conaway v. New York Life Ins. Co., et al.,* 171 Tenn. 290, 102 S.W.2d 66 (1937); *Security Federal S. & L. v. Riviera Ltd.,* 856 S.W.2d 709 (Tenn.App.1992).

The universal rule is that payment of the purchase price or any part thereof to a broker or other agent who is authorized to receive the particular payment, or whose action is subsequently ratified by the principal, constitutes payment to the principal. *See Annotation Payments to Brokers or Agents,* 30 ALR 2d 805. The sales agreement signed by plaintiffs and defendant and the real estate agent provided for "a deposit" in the amount of $10,000.00, receipt of which was acknowledged. Subsequently, defendant paid an additional $20,000.00 to the agent with the knowledge and approval of plaintiffs. The evidence brings this case within the general rule and we conclude that defendant is entitled to a set-off of $30,000.00 against the judgment to be entered on behalf of plaintiffs.

Finally, on the issue of pre-judgment interest, the award was in the Trial Court's discretion to order and we find no abuse, but the set-off against the judgment will be effective from the time of the payment to the agent for the purpose of calculating pre-judgment interest.

We affirm the judgment of the Trial Court, as modified, and remand with costs of the appeal assessed one-half to each party.

GODDARD, P.J.(E.S.), and SUSANO, J., concur.