**Mary Kathryn SHEPHERD,**
**Plaintiff/Appellant.**

v.

**James Arthur GRIFFIN,**
**Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 21, 1995.

Application for Permission to Appeal
Denied by Supreme Court
July 15, 1996.

Stephen P. Hale, Steven W. Likens, and Jennifer Ziegenhorn, Memphis; Armstrong, Allen, Prewitt, Gentry, Johnston & Holmes, Memphis, of counsel, for Plaintiff/Appellant.

Robert F. Miller, and Nimmo Bhagat, Memphis; Thomas J. Walsh, Memphis, of counsel, for Defendant/Appellee.

FARMER, Judge.

This case concerns the final settlement of accounts between former partners, James Arthur Griffin ("Griffin" or "Appellee") and Mary Kathryn Shepherd ("Shepherd" or "Appellant"), and entails a review of the accounting and distribution of partnership as-

sets as determined by the trial court. We first considered this matter in *Shepherd v. Griffin*, 776 S.W.2d 119 (Tenn.App.1989), wherein the underlying facts are more fully set forth. For our purposes, we reiterate that the parties sought divorce in early 1984, but prior to entry of a final decree, entered into a business partnership, known as Griffin Enterprises, in which they transferred all of their assets. It is evident from the record that Griffin's contribution was quite substantial, having been very successful in the 1970s as a musical composer and performer with the pop/rock group "Bread." The partnership agreement provided for a one-third distribution to Griffin and two-thirds to Shepherd. To further complicate matters, Griffin filed a Chapter 11 bankruptcy on March 13, 1984.

In *Shepherd*, we established the date of dissolution as March 13, 1984 and, in agreeing with Griffin's contentions on appeal, remanded the case "for a proper accounting and distribution of the partnership" pursuant to partnership law. *Shepherd*, 776 S.W.2d at 122. Upon remand, the trial court entered its "Amended Findings of Fact and Conclusions of Law," determining that Griffin had impliedly consented to Shepherd's continuation of the business (now known as MKS Enterprises) and, thus, became a creditor of the partnership in accordance with T.C.A. § 61–1–141[1] as of the date of dissolution. The court further found that Griffin had elected profits in lieu of interest for purposes of the statute and that Griffin was, therefore, entitled "to the value of his ⅓ interest in the partnership as of March 13, 1984 plus the profits attributable to the presence of his interest in the partnership from the date of his election until paid the value of his interest." Post-dissolution distributions were to be deducted from this amount. The court ordered the matter referred to a special master for an accounting once the "parameters" to govern such were determined.

The established parameters included the parties' agreement that the value of the business on the date of dissolution was $2,333,769, with Griffin's one-third share being $777,923. The court treated Griffin's interest in the partnership as "terminated" as of March 13, 1984 and identified the continuing business as a "sole proprietorship." The court "further ruled" that Griffin had elected to receive a share of the "profits or losses" of the business, in lieu of interest, but acknowledged Griffin's exception thereto.

After appointment, the Special Master issued various preliminary reports before issuing a "Final Report" and "Report on Rehearing," resulting in objections by both parties. The Master's final accounting encompassed the years 1984 to 1990 and disallowed, as an expense, any compensation to Shepherd in continuing the business since dissolution; reduced Shepherd's starting capital account balance by $92,009; allocated to Griffin his respective share of the profits earned since dissolution, but not losses; and did not charge, as distributions to Griffin, payments made by the bankruptcy trustee with partnership assets.

The trial court adopted the Master's final accounting, with only minor mathematical revisions, by judgment entered December 9, 1993. The end result was an ending capital account balance of $526,560.86 for Griffin and $120,279.69 for Shepherd. Shepherd's motion to alter or amend the judgment was denied.

Shepherd raises the following issues on appeal:

   1. Whether the trial court and special master erred in reducing Shepherd's starting account balance.

   2. Whether the trial court erred in not allowing Shepherd compensation for her services to the continued business.

   3. Whether the trial court and special master erred in not allocating payments of Griffin's debts by the bankruptcy trustee as distributions to Griffin.

   4. Whether the trial court and special master erred in not charging Griffin proportionately with business losses.

Griffin presents three additional issues:

---

1. This statute identifies the "[r]ights of retiring or deceased partner on continuation of business."

Its provisions will be set forth in more detail throughout this opinion.

1. The trial court erred in concluding that [Griffin] consented to a continuation of the business by [Shepherd] and made an election to take profits.

2. The trial court erred in failing to address [Griffin's] interest in the partnership assets for years 1991 to date of distribution.

3. The trial court erred in concluding that the partnership assets became those of [Shepherd] upon dissolution of the partnership.

We begin our review with a determination of Griffin's first issue as it affects the resolution of others raised. Central to our analysis are the provisions of T.C.A. § 61–1–141. This statute establishes the rights of a withdrawing partner, in the event the business is continued under T.C.A. § 61–1–137(b)(2) or certain specified provisions of T.C.A. § 61–1–140, to receive the value of his partnership interest on the date of dissolution with either interest thereon or "the profits attributable to the use of his right in the property of the dissolved partnership." For our purposes, this means that the business may be continued, if Griffin assigns his rights in the partnership property to Shepherd or consents to the business' continued operation although no actual assignment is made. *See* T.C.A. § 61–1–140(a), (b) and (c); *Young v. Cooper,* 30 Tenn.App. 55, 203 S.W.2d 376 (1947).[2] Otherwise, a withdrawing partner, who has not wrongfully dissolved the partnership, "has the right to wind up the partnership affairs; . . . ." T.C.A. § 61–1–136.

As held in *Lange v. Bartlett,* 121 Wis.2d 599, 360 N.W.2d 702 (Ct.App.1984):

It is at . . . the point of dissolution, that the retiring partner makes an election. He can either force the business to "wind-up" and take his part of the proceeds, sharing in profits and losses after dissolution, or he can permit the business to continue and claim as a creditor the value of his interest at dissolution. . . . Distinguishing in the first instance whether a wind-up or a continuation is at hand is critical simply because the settlement of

the former partner's account differs depending on whether it is a wind-up or a continuation.

*Lange,* 360 N.W.2d at 704 (citations omitted).

◼ The record is clear that Griffin has not expressly assigned his rights in the partnership property. Consequently, we must discern whether Griffin nonetheless consented to a continuation of the business as found by the trial court. Griffin's argument to the contrary is primarily based upon this Court's language in *Shepherd* when stating:

The record suggests repeatedly, including Section 18 of the agreement, that the underlying and primary purpose [of the partnership] was facilitation of property distribution in divorce. That being the case, we fail to find in the record what "business" Wife intended to continue which might merit granting her individual ownership of partnership property when Husband filed bankruptcy.

Even if a business capable of continuing were clearly evident in the record, it is not clear that either party intended that business to continue after dissolution. The stipulated order states that dissolution occurred on March 13, 1984. Although as noted earlier, it might be inferred that the dissolution was a result of Husband's bankruptcy the order does not so state. The dissolution could as well have been by consent of the parties, an option provided for in the agreement. If so, the inference would be that the "business" was to cease, and the property distributed to the partners.

Additionally, of the three stated purposes only one clearly might constitute a continuing business—exploitation of the talents of the Husband and others. It would be difficult for Wife to continue such a business if the Husband did not so desire.

*Shepherd,* 776 S.W.2d at 121.

The trial court, upon remand, found that the partnership was dissolved when Griffin filed bankruptcy on March 13, 1984, as so

---

**2.** Partners may also contract for the business's continuation after dissolution. *See Young,* 203 S.W.2d at 385. The partnership agreement between these parties does not expressly so provide.

stipulated by the parties. The court further found that although Griffin had not wrongfully dissolved the partnership, precluding his rights under § 61–1–136, he had impliedly consented to the continuation of the business by acting "inconsistent with a desire to wind up and liquidate ..." when:

(a) ... agreeing in October 1986 to place a 1984 value on the partnership assets.

(b) ... dismissing his request for a receiver to wind-up the partnership and liquidate its assets and failing to request a wind-up and liquidation in the Orders entered in October 1986;

(c) ... consenting to allow Shepherd to treat him as a creditor in a buy-out pursuant to TCA Section 61–1–141 as late as May 14, 1987 as opposed to a partner in a wind-up and liquidation pursuant to TCA Section 61–1–136 and Section 61–1–137(a).

(d) ... demanding ⅓ of the profits of the dissolved partnership ... which can only apply to a situation in which there is a continuation of partnership "business" and a buy-out of the partner's interest as opposed to a wind-up and liquidation of the partnership assets;

(e) ... allowing Shepherd, without objection, to continue to run the business of the former partnership after its dissolution.

With the exception of finding (d), Griffin does not refute these actions on his part. We, therefore, conclude that Griffin has waived his rights under T.C.A. § 61–1–136 to require a "winding up" of the business [3] and has impliedly consented to its continuation.[4]

■ We now consider the related issue of whether the trial court was correct in its determination that Griffin elected profits in lieu of interest for purposes of the statute.[5] We initially note that we do not find Griffin's consent to the continuation of the business to necessarily equate to an election of profits.

The language employed by the court in *Lange v. Bartlett,* merits repeating:

Continuation ... effects a totally different settlement of the former partner's account. The outgoing partner can agree, at the time of dissolution, that the business will be continued. If the outgoing partner elects to allow the business to continue, then that partner has a second election—to receive either interest or profits from the date of dissolution—in addition to the value of his or her interest in the partnership.... This "second election" can be made only by the former partner, it cannot be made by either the continuing partner or the trial court....

. . . .

This election ... need not be made until there has been a final accounting of the partnership. The right of election which the retiring partner has is one which he should be permitted to exercise "after an accounting shall have been taken of the earnings subsequent to dissolution. Otherwise, the right of election would be an illusory one."

*Lange,* 360 N.W.2d at 704–05 (citations omitted). In accord is *Timmermann v. Timmermann,* 272 Or. 613, 538 P.2d 1254, 1261 n. 4 (1975), holding that the "second election" need not be made "until an accounting has disclosed the comparative figures and [the withdrawing partner] sees which is more favorable to him," and *Nichols v. Elkins,* 2 Ariz.App. 272, 278, 408 P.2d 34, 40 (1965), wherein the Arizona Court of Appeals likewise determined that the outgoing partner is not required to make his election until the extent of the profits earned during the post-dissolution period is known.

Shepherd cites no opposing authority to Griffin's request that he be allowed to make an informed choice between interest or profits subsequent to an accounting revealing both figures. She does refer to opposing counsel's statement, as did the trial court,

3. The record indicates that MKS Enterprises primarily consists of real estate investments and the collection of royalties.

4. We do not find our decision inconsistent with *Shepherd v. Griffin,* as a thorough reading of that opinion reveals that the court made no specific

finding as to whether the business could continue, but only doubted its feasibility.

5. The record establishes that Griffin objected to this ruling in the trial court.

that Griffin did not care whether he was considered a partner in the wind up of the partnership or a creditor in a buy-out. We do not find this statement persuasive, however, as it merely implies an acquiescence in the continuation of the business. The mere fact that the partnership business continues does not eliminate or foreclose Griffin's election under the statute.

▮▮▮ We are inclined to agree with the sound reasoning of the foregoing authorities and hold that a withdrawing partner is not obligated to make his election under § 61–1–141 until he possesses sufficient information to make an informed decision. This necessarily entails an accounting to reveal the extent of the profits earned by the continuing business since dissolution. The record shows that the Master's accounting sets forth in detail Griffin's respective share of the profits for the post-dissolution period under consideration. Nothing has been revealed to this Court's satisfaction indicating that Griffin has previously exercised his option under the statute.[6] Thus, on remand, Griffin is to elect either interest or his respective share of the profits since dissolution.

This leads to discussion of whether Griffin is to be charged with a proportionate share of the business' losses, if an election of profits is made. T.C.A. § 61–1–141, in its entirety, provides:

**Rights of retiring or deceased partner on continuation of business.**—When any partner retires or dies, and the business is continued under any of the conditions set forth in § 61–1–140(a), (b), (c), (e) or (f) or § 61–1–137(b)(2), without any settlement of accounts as between him or his estate and the person or partnership continuing the business unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as any ordinary creditor an amount equal to the value of his interest in the dissolved partnership

with interest, or at his option or at the option of his legal representative in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided, that the creditors of the dissolved partnership as against the separate creditors, or the representative, or the retired partner, shall have priority on any claim arising under this section, as provided by § 61–1–140(h).

Premised upon the trial court's decision that Griffin had elected profits, the Master concluded that § 61–1–141 does not require Griffin to share proportionately in the losses during the post-dissolution period, reasoning that "the statute only refers to profits" and "treats the withdrawing partner 'as an ordinary creditor.'" The Master further explained:

[T]he Master interprets [T.C.A. § 61–1–141] to equate profits with interest except that the choice made by the withdrawing partner affects only the rate of return he or she is to receive. Since the interest an ordinary creditor would receive would be unaffected by the existence of losses, it is the Master's opinion that the profits a withdrawing partner receives under the statute should similarly be unaffected by the existence of losses, . . . .

Shepherd argues that the trial court's concurrence in the Master's finding as to this issue is error because (1) the parties "otherwise agreed" that Griffin would share proportionately in both profits and losses and (2) the trial court recognized their agreement in its "Order Regarding Accounting Parameters" and additionally held that a proportionate share of the losses would be charged to Griffin in further rulings prior to the Master's final report.

▮▮▮ The trial court, in its final judgment, expressly found no "clear agreement" between the parties "address[ing] the specific issue of whether losses would . . . be considered." We find a preponderance of the evidence to support this finding. As to the

---

**6.** The court is cognizant of the fact that litigation before the trial court included Griffin's argument of his right to a "full share of the profits until distribution" as addressed in his "Response to Shepherd's Brief On Accounting Parameters."

We find this insufficient to constitute an election for purposes of the statute as Griffin's argument appears made from the belief that the partnership business would be wound up and its assets liquidated.

latter argument, we point out that interim rulings by the trial court are subject to modification at any time prior to entry of a final judgment. Clearly, the issue before us is one of law involving interpretation of the statute. Thus, the trial court's conclusions in respect thereto are subject to *de novo* review without a presumption of correctness. *See, e.g., Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

On appeal, Shepherd cites no case law interpreting the statute to require an outgoing partner electing to receive profits to share proportionately in the losses of the continuing business as well. In *Lange,* 360 N.W.2d at 704, the court clearly distinguished between the profits garnered by an outgoing partner from a continuation of the business and those incident to a wind up and liquidation when stating:

> [I]n a wind up, ... the outgoing partner shares in both profits and losses until termination.... The former partner, therefore, does not take as a creditor.... Termination is the point in time when all of the partnership affairs are wound up....
>
> ... The profits garnered from continuation are different from the profits at wind-up simply because, in a continuation, the outgoing partner is not responsible for the debts of the continuing partnership. The outgoing partner ... takes as a creditor.

*Id.* (citations omitted). *Timmermann,* likewise, concludes that the "second election" shields the outgoing partner from losses, "at least vis-a-vis the continuing partners." *Timmermann,* 538 P.2d at 1261.

Griffin cites *M. & C. Creditors Corp. v. Pratt,* 172 Misc. 695, 17 N.Y.S.2d 240 (1938) which interpreted an almost identically worded statute to our own to conclude:

> [W]here the surviving partners of a business continue to use the interest of a deceased partner in the conduct of the firm's affairs, they must account to the representatives of the decedent, not only for the value of his share ... but also for profits earned which may be attributed to that value. On the other hand, all losses are required to be borne entirely by the surviving partners.

*Pratt,* 17 N.Y.S.2d at 253. *Pratt* reasoned that if partners continuing in the business "enter into new transactions with the partnership funds, they do so at their peril.... If no profits are made, or even if a loss is incurred, they must be charged with interest on the funds they use, and the whole loss will be theirs." *Id.* at 255 (quoting *Brown's Appeal* 89 Pa. 139, 147).

We conclude that the trial court and Master did not err in their interpretation of the statute. T.C.A. § 61–1–141 unequivocally treats a retiring partner as "any ordinary creditor" to the extent of his remaining investment in the business. As a creditor, he is not obligated to share directly in the business' losses.

■■■ We summarize as follows: Upon dissolution, a withdrawing partner who has not wrongfully dissolved the partnership may require a winding up of the partnership affairs, T.C.A. § 61–1–136, and share proportionately in both profits and losses until termination, when all partnership affairs are settled. In this event, the respective interests of the partners in the partnership, including profits and losses, do not change until final settlement (termination). *See Shepherd v. Griffin,* 776 S.W.2d at 122. If, on the other hand, the business continues as set forth in T.C.A. § 61–1–141, and there is no settlement of accounts as between the retiring and continuing partners, the outgoing partner becomes a creditor of the former partnership to the extent of his investment and is entitled to the value of his interest in the partnership on the date of dissolution with interest, or in lieu thereof, the profits attributable to the use of his right in the property of the dissolved partnership. So long as a retiring partner's share of the assets remain in the continuing business and are being utilized by the continuing partner to effectuate a profit, the outgoing partner is entitled to those profits attributable to his remaining share, undiminished by any losses. Dissolution of the partnership and continuation of the business, however, does not affect the status of the assets. The assets remain partnership assets until a final settlement of accounts between the former partners. *See, e.g., Jade, Inc. v. Bendewald,* 468 N.W.2d

138, 142 (S.D.1991). *See also Hilgendorf v. Denson*, 341 So.2d 549, 551 (Fla.Dist.Ct.App. 1977) (remaining partner continuing partnership business with "partnership" assets is required to account to withdrawing partner).

We next address the trial court's alleged error in concurring with the Special Master to reduce Wife's starting account balance by $92,009. Of the $2,333,769 total value placed on the partnership assets as of March 13, 1984, the parties agreed that Griffin's share was $777,923 and Shepherd's, $1,555,846. The Master chose to deduct the forgoing amount, reasoning that such represented certain tangible personalty in the form of "automobiles, furniture and jewelry" retained by Shepherd, but not included in the prior accounting [7] to reduce her capital account valuation. The Master found the converse true as to the tangible personalty retained by Griffin and considered this "inconsistent treatment" erroneous. The Master further determined that the items retained were not used in furtherance of the business. Thus, the value of Shepherd's capital account as of the date of dissolution was reduced accordingly.

On appeal, Shepherd contends that the Master's decision in this regard exceeded the scope of his reference as the beginning capital account balances were stipulated to by the parties and set forth in a prior order of the trial court. Shepherd further contends that the total value of the partnership assets were not distributed because the beginning balances as found by the Master total less than the agreed total value established by the parties. Finally, Shepherd argues that her retention of these particular assets after dissolution is consistent with her retention of all other assets of the former partnership in order to continue the business and they, therefore, should not be treated differently for purposes of the accounting.

■ Our review is in accordance with the concurrent finding rule which renders concurrent findings by the master and trial court conclusive on appeal unless (1) the issue should not have been referred to the

master; (2) the findings are based on an error of law; (3) the findings involve a question of law or a mixed question of law and fact; or (4) the findings are not supported by substantial and material evidence. *See In re Estate of Wallace*, 829 S.W.2d 696, 700 (Tenn.App.1992); *Crouch v. Crouch*, 385 S.W.2d 288, 291 (Tenn.App.1964). At first glance, it appears that the Master and trial court chose to disregard the prior stipulation of the parties as to the agreed upon starting balances. On closer examination, however, we are inclined to agree with Griffin that any error in this respect is harmless. We first point out that Shepherd, in argument, does not dispute her retention of these personal items or their value. Furthermore, the record indicates that the value of these items was considered when first determining the value of total partnership assets. The record shows that the Master, in reconciling the capital accounts, considered "actual distributions" that were periodically made to the parties after dissolution to reduce each party's capital account and arrive at an "ending capital account balance." Indeed, the Master could have begun his calculations with the agreed balance as to Shepherd ($1,555,846) and then deducted the $92,009 as an actual distribution. He chose, however, to reduce Shepherd's starting capital account balance by this amount. The end result is the same. In short, the $92,009 reduction represents an "actual distribution" to Shepherd, albeit not designated as such, and was proper within the confines of the accounting method utilized by the Master. We find this issue without merit.

■ Shepherd's next issue concerns whether the trial court erred in disallowing her to deduct as a proper business expense compensation for her services in continuing the business. The trial court's amended findings, entered in May 1991, indicate that Shepherd's participation in the business since dissolution, included "actively manag[ing]" the California apartment complex, Southampton. In disallowing the deduction, the Master reasoned as follows:

---

**7.** This is in reference to the original accounting which was before this Court for review in *Shep-* *herd v. Griffin.*

[B]ased on the testimony of Shepherd and her father, Charles Collins, that the bulk of the work in collecting royalties and managing Southampton was performed by Collins and a resident manager.... Collins and the resident manager were both compensated for their services [Collins approximately $18,000 per year, the resident manager approximately $3,000 per year]. It seems inappropriate to add another layer of compensation for the supervisory services claimed by Shepherd.... Shepherd's services were redundant of those performed by others who were compensated therefor. The nature of the work to be performed with respect to assets which are essentially passive in nature and the amount of compensation already paid in relation to the income generated from the activity does not justify additional compensation expense.... It seems that Shepherd made a conscious decision to employ her father in the business for reasons that were not entirely business related; accordingly, the Master feels that additional compensation, even if legally allowable, would not be justified in this case.

The final judgment concurs in the Master's findings.

Shepherd insists that her managerial services enable the business to earn additional profits in which Griffin will benefit and for which he would otherwise be required to pay. She attempts to circumvent the concurrent finding rule by contending that her right to compensation is one of law and/or the concurrent findings are not supported by substantial and material evidence. She relies in part on the language of § 61–1–141 to argue that Griffin clearly is not entitled to share in those profits directly attributable to her services in continuing the business, but only those "profits attributable to the use of his right in the property of the dissolved partnership." As further authority, Shepherd cites *Bracht v. Connell*, 313 Pa. 397, 170 A. 297 (1933), *Lange v. Bartlett*, 360 N.W.2d at 705, and *Timmermann*, 538 P.2d at 1254. *Bracht* allowed "special compensation for services rendered" to partners continuing the partnership business after dissolution. *Bracht*, 170 A. at 300. *Bracht* reasoned:

> [T]he former partner is not merely winding up the affairs of the partnership, receiving money due, paying firm debts and dividing the surplus, for the purposes of liquidation, but is expending time, skill labor in carrying on the business that additional profits may be earned for the former partnership's benefit. In such case, this former partner stands in the position of stranger who has been employed to perform such services. Appellants could have employed managers and no question could be raised as to this expense. They were entitled to be paid for the services they performed ... the court below must determine what is the fair value of such services by a consideration of the nature of the work, the time spent, and the skill used.

*Id.*

*Lange* acknowledged a discord among the jurisdictions regarding the issue of compensation to continuing partners in the absence of an express agreement,[8] but believed the better reasoned view is to allow compensation to a partner who "contributes substantial labor and management services" to the continuation of the partnership business after dissolution. *Lange*, 360 N.W.2d at 706. The *Timmermann* decision is in accord.

The record indicates that the trial court considered relevant, T.C.A. § 61–1–117(6), holding that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his service in winding up the partnership affairs;...." We are inclined to agree with Shepherd that the foregoing is inapplicable to the instant situation where the partnership business is continued after dissolution. We further do not find ourselves in disagreement with the principles espoused by the foregoing authorities on which Shepherd relies. We are not persuaded, however, that their application is warranted under these circumstances, which we find factually distinguishable. The Master believed an imputed salary to Shepherd inappropriate because she had employed others to manage the

---

8. The record suggests no express agreement between the parties on this issue.

"bulk" of the business who were compensated from partnership assets. The Master found Shepherd's services redundant of those she had employed. Shepherd testified that she had employed her father in the operation of the business for which he was compensated. She stated that in addition to providing financial and "tax advice," he resided at the California apartment complex for "as long as six months at a time." Shepherd also conceded employing a "full time" resident manager to manage the complex. During the times when Shepherd resided at the complex, she and her father "act[ed] right alongside the managers." We find substantial and material evidence in the record to support the concurrent finding that additional compensation expense is not warranted. None of the cases cited above involve the situation we have here: the employment of third parties to manage the continuing business who have been compensated from its assets.

We now address the trial court's alleged error in failing to allocate payments made by the bankruptcy trustee with partnership assets as distributions to Griffin. The bankruptcy trustee testified that at the time of the bankruptcy, Griffin's "undisputed asset" was an interest in the partnership. The Master found that the trustee's services "in collecting assets for the business and in settling claims against the [p]artnership's assets benefited both Shepherd and Griffin." To this end, the Master treated as "legitimate partnership expense[s]" most of the legal fees incurred in settling and preserving partnership assets in connection with the bankruptcy.

It is Shepherd's contention that Griffin is judicially estopped from denying that the debts listed in his bankruptcy petition were his own personal debts and consequently, the business assets utilized to pay those debts must properly be treated as distributions to him in the accounting. The bankruptcy petition establishes, on its face, that the debtor in bankruptcy was Griffin, individually, and not the partnership. In listing "all liabilities

of the debtor," Griffin listed creditors secured by partnership property and stated that "[d]ebtor has an undivided ⅓ interest in the ... security and is jointly liable on each claim. The [secured] properties are owned by Griffin Enterprises." In listing "all property of the debtor," Griffin valued the various assets of the partnership and stated that his interest in such was one-third.

Griffin argues that the funds collected by the bankruptcy trustee were not limited to his one-third interest and were disbursed in satisfaction of partnership debt. Conversely, Shepherd asserts that the partnership assets turned over on demand to the trustee were from Griffin's dissolution share only. The trustee testified that "[he] satisfied all of the obligations [as to] all the creditors of [Griffin] and Griffin Enterprises."

■■■■ Partnership property cannot be used in satisfaction of debts of an individual partner. *Beaty v. United States*, 937 F.2d 288, 290–91 (6th Cir.1991). Also, as a general rule, when a partner files bankruptcy, the partner's estate obtains whatever interest the partner had in the partnership. *In re Fulton*, 43 B.R. 273, 276 (Bankr.M.D.Tenn. 1984). In this particular case, however, it appears that the bankruptcy trustee collected partnership property, not limited by Griffin's dissolution share,[9] to satisfy partnership debt, which indeed benefited both Shepherd and Griffin. "Where one partner is adjudged bankrupt, it is the remaining partner's duty to pay [partnership] creditors." 68 C.J.S. *Partnership* § 359 (1950). We find no error by the trial court in this regard.

■■■ The last issue concerns whether, on remand, the Master's accounting should continue to include the year 1991 to the time of final distribution. Shepherd contends that further accounting beyond the year 1990 cannot proceed in the trial court due to the fact that she filed her own Chapter 11 bankruptcy on April 8, 1994. Shepherd fails to cite any legal authority supporting her position. We, therefore, conclude that Griffin is enti-

**9.** The record indicates that the bankruptcy trustee did not limit his collection of monies to Griffin's dissolution share because of his belief that Griffin's "substantial" ownership of assets ultimately transferred to the partnership constituted an avoidable preference. Thus, a "workable and operable" agreement was reached, precluding any procedural "attack" on the partnership itself.

tled to a share of the profits or interest (on the value of his interest at the date of dissolution) until he is actually paid the value of his interest in the dissolved partnership. *See Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97, 101 (Tenn.App.1984). Accordingly, on remand, further accounting is necessary to determine Griffin's share of profits or interest until he receives payment of his partnership interest.

It results that the judgment of the trial court is reversed to the extent that it holds that Griffin elected profits in lieu of interest for purposes of T.C.A. § 61–1–141. The judgment, in all other respects, is hereby affirmed. We remand this case to the trial court with the following instructions: The trial court is to conduct a further accounting, beginning with the year 1991 until distribution. The method of accounting is as before, with no deduction made for compensation to Shepherd for her services in continuing the business. The accounting is to include Griffin's proportionate share of the profits from 1991 forward and Griffin, thereafter, must elect either profits or interest in accordance with the statute. Griffin is not to share proportionately in the losses of the business if an election of profits is made. The assets of the continuing business shall be treated as partnership assets until final settlement of the accounts, with actual distribution to Griffin. Costs are taxed to Mary Kathryn Shepherd, for which execution may issue if necessary.

CRAWFORD, P.J., (W.S.), and HIGHERS, J., concur.