IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**DOROTHY R. W. BARHAM**,

     Plaintiff-Appellant,

                                  Shelby Equity No. 101702-3

Vs.                           C.A. No. 02A01-9608-CH-00200

**DIANE W. COOPER,**

     Defendant-Appellee.
_____

FROM THE SHELBY COUNTY CHANCERY COURT
THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

Clyde W. Keenan; Keenan, Fox & Dabbous of Memphis
For Appellant

Charles E. Hodum and Mitzie C. Johnson of Collierville
For Appellee

***AFFIRMED AND REMANDED***

Opinion filed:

**FILED**

**September 5, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

     This case involves a complaint for an accounting and injunctive relief.  Plaintiff, Dorothy

R. W. Barham, appeals the order of the trial court affirming the report of the Special Master in

favor of defendant, Diane W. Cooper.

Barham and Cooper are sisters, and Cooper controlled Barham's finances pursuant to a general power of attorney executed by Barham. On July 17, 1992, Barham filed a complaint against Cooper in the Chancery Court of Shelby County requesting an accounting, the appointment of a Special Master, and an injunction preventing Cooper from disposing of any of Barham's property. On July 28, 1992, the trial court issued a temporary retraining order against Cooper.[1] On October 30, 1992, Cooper filed an answer that denied the material allegations of the complaint.

On March 11, 1994, Barham filed an amended complaint adding the allegations of undue influence and overreaching. The amended complaint alleges that Cooper induced Barham to enter into a fraudulent contract for the sale of Barham's home. The amended complaint further alleges that Cooper willfully and maliciously exercised control over Barham's property and converted the property to her own use. On June 6, 1995, Cooper once again filed an answer denying the material allegations.

On March 22, 1995, a consent order was entered appointing a Special Master. The consent order provides that the Special Master was appointed for the following purposes: 1) to conduct an accounting of the financial transactions executed by Cooper on behalf of Barham under the fiduciary duties created by the power of attorney executed by Barham on July 11, 1984; 2) to rule on the admissibility of certain transactions and expenses submitted by Cooper; and 3) to decide the issues of whether Barham was the victim of fraud, undue influence, or overreaching.

The Special Master conducted evidentiary hearings on June 13 and 14, 1995. On January 2, 1996, the Special Master filed a report that made detailed findings of fact including the following:

> Barham suffered through an abusive marriage for most of
> her married life. She and her husband divorced, and in the
> divorce settlement Barham received the marital home and
> $10,000.00. During her marriage, Barham relied upon Cooper for

---

[1] The record indicates that a temporary restraining order was issued, but the record is silent as to any subsequent proceedings for injunctive relief until Barham filed a motion for an injunction on December 10, 1993. Apparently, the motion was never acted upon.

help. After the divorce, Barham began living with her ex-husband again. On May 27, 1984, Barham shot and killed her ex-husband, and she was arrested and charged with murder. Cooper hired and paid for a lawyer and posted bond for Barham.

On June 4, 1984, Barham was released from jail and was admitted to the Memphis Mental Health Institute (MMHI) for psychiatric evaluation and treatment. She was diagnosed as depressed and having a dependent personality, but she was not diagnosed as mentally incompetent. Cooper continued to help Barham while Barham was at MMHI. On July 11, 1984, Barham executed a general power of attorney appointing Cooper as her attorney. The primary reason for the power of attorney was to allow Cooper to rent Barham's home, which remained vacant while she was at MMHI, to collect rent, and to do the necessary repairs. Cooper did much of the work herself and arranged for the remainder of the repairs. Barham did not have any funds of her own because she spent the divorce settlement money.

Cooper opened a joint bank account in both her name and Barham's name to deposit the rent money. She used this account to pay for repairs and necessities for Barham. This account remained open until December 6, 1985, at which time the balance of $1,084.42 was transferred to a new, separate account in Cooper's name only. In December 1985, Barham received two checks from her ex-husband's life insurance totaling $10,042.59. Cooper deposited these checks into her separate account and reimbursed herself for the $5,000.00 attorney's fee and the $500.00 bond.

Barham was confined at MMHI until October 14, 1984 and then was released to a half-way house where she stayed until February 1986. On February 14, 1985, Barham pled guilty to

voluntary manslaughter, but she received a suspended sentence. In March 1986, Barham was not taking her medicine, and she threatened suicide. Cooper persuaded Barham to check into Baptist Memorial Hospital where she stayed for six weeks. Upon leaving the hospital, Barham rented a house, and she appeared to be much improved.

On July 20, 1986, Barham and Cooper signed an agreement that provided that Barham owed Cooper $29,000.00 and that she would quit-claim her house to Cooper for the purpose of selling the house. Cooper was entitled to the first $29,000.00 of the proceeds of the sale, and Barham was entitled to any balance. Barham signed the quit-claim deed on July 20, 1986. Barham did not complain to Cooper about the agreement and the quit-claim deed until shortly before filing the complaint in this case in July 1992.

In October 1986, Cooper received $36,143.00 from the sale of Barham's residence, and the proceeds were deposited into Cooper's bank account. In March 1987, Cooper took $30,013.06 from the proceeds and purchased 2,282 shares of a Putnam Investment Mutual Fund in her own name. It was Cooper's intention to send Barham a monthly dividend check as long as Barham needed one. Between December 1986 and June 1992 when this suit was filed, Cooper sent Barham $11,500.00 from the dividends from the Putnam fund. Although the Putnam fund currently has the same number of shares as it did in March 1987, the value of the fund has dropped considerably and is now worth approximately $17,000.00.

Cooper helped Barham obtain her social security benefits, and in the spring of 1986, Barham finally began receiving social security checks. Cooper deposited the initial lump sum check in

4

the amount of $5,372.00 in her personal account. In September 1986, Cooper opened a personal account for Barham in Barham's name only. The account was opened so Barham could write her own checks, and the account was started from an initial deposit of the August and September 1986 social security checks totaling $672.00. After September 1986, the social security checks were directly deposited into Barham's personal account.

After examining the facts, the Special Master first found that Barham had independent advice from her mother and the opportunity for independent advice from her attorney. The Special Master found that there was no misappropriation of funds, no breach of a fiduciary duty, and no undue influence or overreaching by Cooper. The Special Master found that there was an oral agreement between Cooper and Barham for Barham to receive the interest or dividend proceeds from the Putnam Fund. The Special Master specifically found that Cooper was not "short-changing" Barham, but instead, that the Putnam fund dropped in value. Finally, the Special Master found that Cooper was the owner of the corpus of the Putnam fund, and Barham was entitled to interest or dividends from the fund. The Special Master assessed costs against Barham because Cooper was not at fault and breached no fiduciary duty.

Barham filed exceptions to the Special Master's report, and a hearing on the exceptions was held on March 20, 1996. On April 17, 1996, the trial court entered an order denying Barham's exceptions and affirming the Special Master's report. The order recited the chancellor's concurrence with the Special Master's findings of fact including the findings that Cooper did not breach her fiduciary duty, that Barham had the opportunity for independent advice, and that Cooper did not exert undue influence. The trial court also concurred in the Special Master's accounting.

Barham appeals the order of the trial court affirming the findings of the Special Master and presents the following issues for review:

> 1) whether the Special Master erred by failing to find that the execution of a power of attorney created a fiduciary duty between Barham and Cooper;
> 2) whether the Special Master erred by failing to recognize the existence of a presumption of undue influence and to shift the

burden to Cooper once a fiduciary duty was established;
3) whether the Special Master erred by failing to recognize that the shifted burden of proof is raised to the level of clear and convincing evidence;
4) whether the Special Master erred in finding that Barham had independent advice or opportunity for independent advice;
5) whether the Special Master erred in finding that Barham was not subjected to undue influence and overreaching;
6) whether the Special Master erred in finding a proper accounting on the part of the Cooper;
7) whether the trial court erred in refusing to allow Barham to present additional evidence, newly discovered following the hearings before the Special Master to the court; and
8) whether the trial court erred in adopting the findings of the Special Master, which were contrary to the weight of the evidence.

Concurrent findings by the master and trial court are conclusive on appeal unless (1) the issue should not have been referred to the master; (2) the findings are based on an error of law; (3) the findings involve a question of law or a mixed question of law and fact; or (4) the findings are not supported by substantial and material evidence. *Shepherd v. Griffin*, 929 S.W.2d 336, 344 (Tenn. App. 1995); *see also* T.C.A. § 27-1-113 (1980).

Barham first argues that the Special Master erred by failing to find that the execution of a power of attorney created a confidential relationship between Barham and Cooper. A person authorized to act on behalf of another by virtue of an unrestricted power of attorney has a confidential relationship with the person who executed the power of attorney. *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. App. 1989). In this case, it is undisputed that Barham executed a power of attorney in favor of Cooper and, therefore, that Barham and Cooper are in a confidential relationship. However, the Special Master did not fail to find that the power of attorney created a fiduciary duty. Instead, the Special Master found that Cooper had not breached her fiduciary duty, and necessary to this holding is a finding that a fiduciary duty existed in the first place. This issue is without merit.

We will consider Barham's second and third issues together. Barham argues that the Special Master erred by failing to recognize the existence of a presumption of undue influence and by failing to shift the burden to the level of clear and convincing evidence to Cooper.

The existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, gives rise to a presumption of undue influence that may be rebutted only by clear and convincing evidence of the fairness of the

6

transaction. *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995). Cooper argues that a relationship between family members does not always create a confidential relationship and does not always give rise to a presumption of undue influence. The relations between family members and relatives are not, in and of themselves, confidential relationships. *Mitchell*, 779 S.W.2d at 389. However, in this case, Barham executed a power of attorney that gave Cooper full control of Barham's finances. As stated above, a person authorized to act on behalf of another by virtue of an unrestricted power of attorney has a confidential relationship with a person who executed the power of attorney. *Id.* Because the power of attorney executed in favor of Cooper created a confidential relationship and Cooper received a benefit from the sale of Barham's house, we believe that a presumption of undue influence was present in this case, and therefore, the burden was on Cooper to prove the fairness of the transaction by clear and convincing evidence.

Barham asserts that the Special Master's report did not take into account the shifted burden of proof. Although the Special Master did not specifically refer to the standard of proof required to overcome the presumption in the master's report, we believe that the Special Master properly considered the shifted burden. In closing remarks before the Special Master, Barham's attorney's last statement was, "And once that happens [the existence of a confidential relationship] the burden shifts to the fiduciary to come forward and properly account for all the funds, and we would move the Court to grant the relief that we have requested." The Special Master responded, "Okay. I thank you very much." The Special Master found that Cooper overcame the presumption of undue influence by proving the nonexistence of undue influence.

In the order affirming the Special Master's findings, the trial court stated that "the Special Master's report is clear and follows the law." The trial court also stated, "The Court additionally finds that the Special Master found by clear and convincing evidence that the burden of proof has been carried by clear and convincing proof, and that there has been no breach of fiduciary duty by the Defendant, Diane W. Cooper." It appears that the burden of proof was properly shifted to Cooper in this case.

Barham next argues that the Special Master erred in finding that she had independent advice from her mother and the opportunity for independent advice from an attorney. One way to prove the fairness of the transaction is to show that the grantor had the benefit of competent,

7

independent advice on the advisability of making the gift or conveyance. ***Richmond v. Christian***, 555 S.W.2d 105, 107-08 (Tenn. 1977). This advice need not be contemporaneous with or immediately preceding the gift or conveyance. ***Brown v. Weik***, 725 S.W.2d 938, 945 (Tenn. App. 1983). In ***Turner v. Leathers***, 191 Tenn. 292, 232 S.W.2d 269 (1950), the Tennessee Supreme Court discussed the content and extent of independent advice necessary to overcome the presumption of invalidity:

> Proper independent advice in this connection means that the donor had the [preliminary] benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself of his proposed benefactions.

*Id.* at 297-98, 232 S.W.2d at 271 (citations omitted). The rule of independent advice means that the adviser must not only be competent but independent. *Id.* at 297, 232 S.W.2d at 271.

We believe that the Special Master's finding that Barham had independent advice is not supported by substantial and material evidence. ***See Shepherd***, 929 S.W.2d at 344. Barham consulted with her mother before quit-claiming her house to Cooper, but Barham's mother is also Cooper's mother. Barham testified that she wanted to sue her mother also, but that her mother died. The attorney who prepared the quit-claim deed was the same attorney who assisted Barham in litigation to recover her ex-husband's life insurance proceeds. Barham had the opportunity to speak with the attorney concerning the quit-claim deed, but there is no evidence that she actually met with him. Barham did not have independent advice on the advisability of making the conveyance of her house. However, proof of independent advice is only one means of overcoming the presumption, and proof of independent advice is not necessary in all cases. ***Richmond***, 555 S.W.2d at 107-08; ***Gordon v. Thornton***, 584 S.W.2d 655, 658 (Tenn. App. 1979).

Barham next argues that the Special Master erred in finding that she was not subjected to undue influence, and she asserts that the Special Master failed to take into account her diminished capacity. Cooper, on the other hand, argues that there was no proof of diminished capacity and that Barham had knowledge of all of the transactions.

Evidence of one party's deteriorated mental or physical condition will substantiate the

existence of a confidential relationship as well as the ability of the dominant party to influence the weaker party, and the weaker party need not be legally insane. *Williamson v. Upchurch*, 768 S.W.2d 265, 270 (Tenn. App. 1988). Any condition rendering the weaker party unable to guard against the dominant party's imposition or undue influence is sufficient. *Id*. The question to be answered is not whether the weaker party's decision was a good one, or even whether the weaker party knew what he or she was doing at the time, but instead, the courts must determine whether the weaker party's decision was a free and independent one or whether it was induced by the dominant party. *Id*.

The Special Master found that Barham was diagnosed as depressed and having a dependent personality, but that she was not diagnosed as mentally incompetent. There is proof in the record that Barham was depressed, but the record does not show that her mental condition deteriorated. She has not shown a condition that made her unable to guard against Cooper's influence. We believe that the Special Master considered Barham's mental condition and her confinement at MMHI in reaching his decision.

We also believe that the Special Master correctly found that Barham was not subjected to undue influence. Transactions between persons in a confidential relationship are not automatically invalid, but the relationship of trust and confidence between persons in a fiduciary relationship commands the close attention of the courts to the fairness of any transaction between them. *Security Federal Sav. & Loan Ass'n of Nashville v. Riviera Ltd.*, 856 S.W.2d 709, 714 (Tenn. App. 1992). The law raises a presumption that the transaction is invalid and the evidence required to overcome the presumption is determined by the circumstances of each case. *Id*. The factors that are important in determining whether a transaction is fair include: (1) whether the fiduciary made a full and frank disclosure of all relevant information within his possession; (2) whether the consideration was adequate; and (3) whether the principal had independent advice before completing the transaction. *Id*. (citations omitted).

Cooper testified that she did not request the agreement evidencing the $29,000.00 debt, nor did she request the quit-claim deed. She testified that it was what Barham wanted to do after discussing it with their mother and that Barham decided that it should be done to repay Cooper for her help. In addition, Cooper presented a letter from Barham that showed Barham's love and gratitude toward Cooper. The Special Master found that the testimony was clear that Cooper

helped Barham in almost every conceivable way. Cooper handled the rental and repairs of the property, took Barham to the store and the doctor, and "did just about everything a person could do for another." Because evidence in the record supports the concurrent finding that there was no undue influence, this Court cannot disturb the findings on appeal. *Shepherd*, 929 S.W.2d at 344.

Barham next argues that the Special Master erred in finding a proper accounting on Cooper's part. Barham asserts that Cooper failed or refused to produce all of the documents in her possession and that she cannot account for social security checks totaling $6,500.00. Cooper was unable to find six months worth of bank statements, and she testified that she searched for them and asked the bank for copies of them. Cooper also testified that she deposited the social security checks.

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *Mays v. Brighton Bank*, 832 S.W.2d 347, 351-52 (Tenn. App. 1992). The weight, faith, and credit to be given to any witness's testimony lie in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*. at 352.

The Special Master found that Cooper deposited the social security checks and that the bank statements show nothing unusual or improper. The Special Master stated, "It is unfortunate that these 1986 bank statements cannot be found; however, your Master finds nothing to indicate any wrongdoing on the part of Mrs. Cooper." The trial court affirmed the findings of the Special Master and stated, "The Court further finds that the Defendant, Diane W. Cooper, is an honest person and credible and confirms the Special Master's report that a proper accounting was done."

We are bound by these concurrent findings because the findings are supported by substantial and material evidence. *Shepherd*, 929 S.W.2d at 344.

After the Special Master filed his report, the trial court refused to allow Barham to present additional witnesses who would testify about the real estate transfer. Barham argues that the trial court erred in refusing the additional evidence. The *Tennessee Rules of Civil Procedure* provide that "The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Tenn.

10

R. Civ. P. 53.04(2). The trial court is not required to entertain additional witnesses, but has the discretion to do so. In this case, the trial court noted that the complaint was filed in 1992 and that the hearing was held in 1995, but that the additional witnesses did not come forward until 1996 to recount conversations with Barham in 1986, 1987, and 1988. We find that the trial court did not abuse its discretion by rejecting the additional testimony.

Finally, Barham argues that the trial court erred in adopting the findings of the Special Master because she contends that the findings are contrary to the weight of the evidence. This Court must affirm the concurrent findings of the Special Master and the trial court if there is any material evidence to support the trial court's concurrence. *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. App. 1995). As stated above, we find that Cooper has shown the nonexistence of undue influence, which overcomes the presumption, and that the evidence in the records supports the concurrent findings of the Special Master and the trial court.

Accordingly, the order of the trial court affirming the Special Master's report is affirmed. This case is remanded to the trial court for such further proceedings as necessary, including provisions for payment of the interest income to Barham. Costs of appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

11