# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 2001 SESSION

## ROBERT F. MARENGO AND FRANCINE R. MARENGO V. TERRY BOWEN

**Appeal from the Chancery Court for Putnam County**
**No. 92-573Vernon Neal, Chancellor**
_____

**NO. M2000-02379-COA-R3-CV - Filed July 12, 2002**
_____

## OPINION

This is an appeal from the judgment of the Chancellor regarding the judicial dissolution of a continuing partnership. The trial court determined the valuation of the withdrawing partner's interest in the company, and his obligation to the partnership, should be accounted for when there is an actual distribution of funds. The trial court also concluded it was proper to add an additional $20,000 as a going concern adjustment to the valuation of the partnership, the calculation of certain salary adjustments were proper, a marketability and/or minority discount does not apply to the partnership, and an adjustment for a portion of the continuing partnership's legal and professional expenses was granted. After reading the record and hearing oral arguments, this Court affirms the trial court's determination offsetting the withdrawing partner's debt to the partnership when there is an actual distribution of funds and reverses the trial court's addition of $20,000 as a going concern value to the valuation of the partnership. We also affirm the trial court's salary adjustments, refusal to apply a minority and/or marketability discount, and adjustment for a portion of the partnership's legal and professional expenses. The judgment of the trial court is affirmed in part, reversed in part, and remanded for recalculation of the value of the withdrawing partner's interest as consistent with this order. Costs of this appeal shall be split between the appellant and the appellee.

**Tenn.R.App.P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

DON R. ASH, S.J., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and BEN H. CANTRELL, P.J., M.S., joined.

Jeffrey L. Levy, Nashville, Tennessee, and Michael Fox, Nashville, Tennessee, for the appellants, Robert and Francine Marengo.

Sharon Potter, Crossville, Tennessee, for the appellee, Terry Bowen.

1

# OPINION

## I.

On September 1, 1989, Plaintiffs/Appellants, Robert F. Marengo and Francine R. Marengo, formed an oral partnership with Defendant/Appellee Terry Bowen known as Custom Fireplaces & More. Plaintiffs made a personal loan to the Defendant on April 15, 1991, as evidenced by two notes for $9,500 and $19,500. Defendant repaid his personal loan from the Plaintiffs on August 12, 1992, by refinancing it with a loan from the partnership. The Partnership issued a check payable to Defendant in the amount of $29,086.64. Defendant endorsed the check in favor of Plaintiffs. The loan by the partnership was further evidenced by a promissory note, referred to as "the Bowen Note." The Bowen Note was carried on the books of the Partnership as a partnership asset. On August 21, 1992, Plaintiffs made a separate advance to the Partnership, also in the amount of $29,086.64, from their personal funds. The advance made by the Plaintiffs was carried on the books of the Partnership as a partnership liability.

Plaintiffs notified the Defendant the partnership was dissolved by letter dated September 10, 1992. Plaintiffs filed a Complaint to Dissolve a Partnership on October 5, 1992, requesting judicial dissolution and continuation of the business with Defendant to receive his appropriate share. Defendant filed his Answer on November 18, 1992 and consented to the continuation. Thomas E. Hale was appointed as Special Master on May 6, 1993. Mr. Hale was removed as Special Master due to a potential conflict of interest on November 5, 1993 and replaced by Jim H. Camp. Mr. Camp's report found, among other things, it was proper to employ the excess earnings method to value the business, it was proper to add an additional $20,000 as a going concern adjustment, Defendant's debt should not be offset against his capital account in determining his dissolution date value until the date of distribution, and a marketability and/or minority discount does not apply to the partnership. The Chancellor held a limited hearing on Plaintiffs' objections, and initially found the withdrawing partner's debt should be offset against his capital position as of the date of dissolution, September 10, 1992, and remanded the matter to Mr. Camp for reconsideration. Mr. Camp filed a "Final Report of Special Master, Jim H. Camp" on November 25, 1998, acquiescing to the Chancellor's recommendation the debt should be applied as a reduction to the Defendant's capital account. Sadly, the Special Master became ill and died before he was able to present his testimony to the court.

Next, the Court appointed Special Master Joe Thorne to review Mr. Camp's report. Mr. Thorne filed his report on March 9, 2000. Mr. Thorne concluded he could find no fault with the addition of $20,000 as a going concern value. He also stated in his opinion, the proper time for offsetting the loan to the Defendant was at the time of settlement. A final hearing was held before the Chancellor on July 10, 2000 and the Chancellor signed the resulting Order on August 24, 2000. Plaintiffs timely filed their Notice of Appeal on September 15, 2000. Defendant filed a Motion to Alter or Amend on September 22, 2000. The Court filed an Amended Order on November 30, 2000.

**II.**

The following issues are before the court: (A) Whether the trial court erred in offsetting the value of the withdrawing partner's debt to the partnership when there is an actual distribution of funds rather than the dissolution date; (B) Whether the trial court erred in adding a $20,000 "going concern value" adjustment to the value of the partnership as of the dissolution date; (C) Whether the trial court erred by applying an "artificially low salary adjustment" to reflect the contributions of the three partners to the business prior to the dissolution date in determining the value of the partnership; (D) Whether the trial court erred by applying an "artificially low salary adjustment" to reflect the contributions of the remaining partners to the business after the dissolution date in determining the value of the partnership; (E) Whether the trial court erred when it refused to apply a minority and/or marketability discount, where the withdrawing partner had only a one-third interest and the remaining partners were a married couple with the power to outvote any other partner; and (F) Whether the trial court erred in applying an adjustment for a portion of the legal and professional expenses incurred by the partnership when determining the withdrawing partner's interest.

**III.**

**A.      Whether the trial court erred in offsetting the value of the withdrawing partner's debt to the partnership when there is an actual distribution of funds, rather than the dissolution date of September 10, 1992?**

This court must first determine the appropriate date for the calculation of Bowen's interest in the partnership, followed by consideration of the proper timing for the offset of the value of Bowen's corresponding debt to the partnership. Bowen complains the trial court's concurrent findings of fact preclude appellate review of the Chancellor's determination the offset should be calculated when there is an actual distribution of funds. Although concurrent findings of fact are typically entitled to preclusive effect, appellate courts may intervene where there are questions of law, mixed questions of law and fact, or where the ruling is not supported by material evidence. Staggs v. Herff Motor Co., 390 S.W.2d 245, 251 (Tenn.1965). The determination of the date of the offset is ultimately a legal question governed by the terms of the promissory note executed between the parties and the interpretation of the Tennessee statutes under the Uniform Partnership Act. As such, appellate review of this issue is appropriate.

For purposes of clarification, this court would like to distinguish the two scenarios in which a former partner's interest in a dissolved partnership may be calculated. First, dissolution may be achieved through completely winding up the partnership's operations. An accounting between former partners and the calculation of a withdrawing partner's interest is appropriate as of the date of distribution only when the partnership has been wound up. Shepard v. Griffin, 929 S.W.2d 336 (Tenn.App.1995). In contrast, two or more of the former partners may elect to continue the operation of the partnership without the participation of one or more former partners. Tennessee's adoption of the Uniform Partnership Act provides specific instructions for the proper

3

calculation of a withdrawing partner's interest in a continuing partnership. T.C.A. §61-1-141 indicates the withdrawing partner of a continuing partnership is entitled to receive the value of his fixed interest on the date of dissolution plus his election of either interest or the profits attributable to the continuing partners' use of his interest in the now dissolved partnership. The purpose of T.C.A. §61-1-141 is to compensate the withdrawing partner for the profits earned by the use of his equity by the continuing partnership. Bowen consented to the continuation of the partnership, and calculation of the withdrawing partner's interest as of the date of dissolution is appropriate under T.C.A. §61-1-141.

Next, we must consider the appropriate timing for the offset of the value of Bowen's corresponding debt to the partnership. This Court believes the terms of the Promissory Note executed by the parties control the maturity of the Bowen Note and the timing for the offset of Bowen's debt to the partnership. The terms of the Bowen Note do not state the note is payable on demand, at sight or at the will of the holder. In fact, the Bowen Note does not state any time for payment, and thus constitutes a demand note pursuant to T.C.A. § 47-3-108. Ordinary demand notes are considered to mature on the date of issue. Shackleford v. Olsen, 675 S.W.2d 171 (Tenn.1984).

However, the Bowen Note is not merely an ordinary demand note. The Bowen Note also contains language constituting a partnership agreement between the partners regarding the dissolution of the partnership. The pertinent language in the Bowen Note reads, "in the event of a buyout, the unpaid balance of this note, including interest due to date, will be subtracted from the agreed selling price of my 1/3 (one third) share of all the owner equity, tools, equipment, accounts, and general intangibles of Custom Fireplaces & More." "Buyout" is defined in Black's Law Dictionary as 'the purchase of a controlling percentage of a company's shares. A buyout may be accomplished through negotiation, through a tender offer or through a merger.'

The additional partnership agreement language in the Bowen Note also modifies the application of the Uniform Partnership Act. The provisions of the Uniform Partnership Act apply where there are no provisions in the partnership agreement relative to dissolution, distribution of assets, or accounting upon dissolution. Hoppen v. Powell, 600 S.W.2d 736 (Tenn.Ct.App.1980). These parties formed an oral partnership, and the provisions of the Uniform Partnership Act would initially appear to apply to the dissolution of the partnership. T.C.A. § 61-1-139(3) generally mandates application of all partnership assets to the satisfaction of all of the partnership liabilities in settling the accounts between former partners. T.C.A. § 61-1-141 also provides withdrawing partners of a continuing partnership shall have the value of their interest in the partnership ascertained on the date of dissolution.

However, Hoppen v. Powell also contained a reference to compare Young v. Cooper, 203 S.W.2d 376 (Tenn.Ct.App.1947). Young v. Cooper examined the dissolution of a partnership that included a written agreement regarding dissolution, distribution of assets and accounting upon dissolution. The court stated in Young v. Cooper, "These partners were operating under a written contract. 'The duties and

obligations of partners arising from an actual partnership relation, however, are regulated by the express contract as far as they are touched thereby, and as regards other matters they are implied by law.' 40 Am.Jur. 140, Partnership, Section 20. *Id*. at 385.

This Court concludes the additional partnership agreement language in the Bowen Note regarding the application of the debt in the event of a buyout indicates these parties were operating under a written contract that specifically addressed the dissolution of the partnership. This contractual agreement among the partners takes precedence over the general statutory framework implied by law for the application of partnership property upon dissolution. The trial court properly determined the value of the partnership on the date of dissolution, calculated the increased value of the partnership as of the trial date and assessed the agreed selling price of Bowen's partnership interest per the terms of the Bowen Note. Consequently, the trial court's determination the Bowen Note should be offset against the value of Bowen's partnership interest when there is an actual distribution of funds is affirmed.

**(B)     Whether the trial court erred in adding a $20,000 "going concern value" adjustment to the value of the partnership as of the dissolution date?**

Again, the Appellee contends appellate review of the going concern value adjustment is precluded by the trial court's concurrent findings of fact. However, appellate review of this issue is appropriate because it involves a question of law and does not appear to be supported by material evidence. The trial court adopted the excess earnings approach as the method for valuing the partnership. The excess earnings method considers the value of both tangible and intangible assets when arriving at the total value of the business. The going concern value of the partnership must be classified as either a tangible or intangible asset. Special Master Thorne ultimately classified the going concern value of the partnership as a tangible asset and assessed a value of $20,000. He failed however, to cite any material evidence to support his conclusion the going concern value of the partnership was a tangible asset or that it should be valued at $20,000. In fact, the only evidence in the record related to the going concern value of the partnership suggests it may be an intangible asset. Mr. Thorne eventually concluded the value of *all* intangible assets consisted of $3,428. This court concludes the trial court erred in adding a $20,000 going concern value adjustment to the value of the partnership as of September 10, 1992.

**(C)     Whether the trial court erred by applying an "artificially low salary adjustment" to reflect the contributions of the three partners to the business prior to the dissolution date in determining the value of the partnership?**

and

**(D)     Whether the trial court erred by applying an "artificially low salary adjustment" to reflect the contributions of the remaining partners to the business after the dissolution date in determining the value of the partnership?**

The court will address issues 3 and 4 together since they both consider the same topic—salary adjustment figures. Salary figures for the contributions of the partners must represent a reasonable wage for similar personnel performing the same or similar functions in a similar sized business. Partners are entitled to be compensated for the fair value of their time, skill and labor for the services they performed. Shepard, 929 S.W.2d at 345. The record in this matter contains material evidence to support the concurrent findings of both of the Special Masters and the Chancellor. The determination of the trial court is conclusive, and this court affirms the Chancellor's salary adjustment.

**(E)      Whether the trial court erred when it refused to apply a minority and/or marketability discounts, where the withdrawing partner had only a one-third interest and the remaining partners were a married couple with the power to outvote any other partner?**

Appellee contends appellate review of the trial court's refusal to apply a 30% minority and/or marketability discount is precluded by the trial court's concurrent findings of fact. The application of a minority and/or marketability discount to the valuation of a withdrawing partner's interest is a question of law. Thus, appellate review of this issue is appropriate. It is also an issue of first impression in Tennessee. This court has considered the precedents of other states for guidance. This court is unwilling to apply a minority and/or marketability discount to the valuation of a partnership in the absence of specific authorization under Tennessee law. Consequently, this court affirms the trial court's refusal to apply a minority discount to the calculation of the withdrawing partner's interest.

**(F)      Whether the trial court erred in applying an adjustment for a portion of the legal and professional expenses incurred by the partnership when determining the withdrawing partner's interest?**

T.C.A. §61-1-141 explicitly provides the withdrawing partner becomes a creditor of the partnership as of the date of dissolution. The law is well established in Tennessee the surviving partners are entitled to attorney fees for defending partnership assets. Bird v. Collette, 168 S.W.2d 797 (Tenn.App. 1942); Evans v. Boggs, 245 S.W.2d 641 (Tenn.App.1951). This Court affirms the trial court's determination Bowen was a creditor of the partnership and the application of an adjustment for a portion of the legal and professional expenses incurred by the continuing partnership.

**IV.**

This court concludes the trial court's determination offsetting the withdrawing partner's debt to the partnership when there is an actual distribution of funds is affirmed; the trial court's addition of a $20,000 going concern value adjustment to the value of the partnership is reversed and remanded for recalculation consistent with this opinion; the trial court's determinations regarding salary adjustments are affirmed; the trial court's refusal to apply a minority discount to the calculation of the value of the withdrawing partner's interest in the partnership is affirmed; and the trail court's adjustment for a

portion of the legal and professional expenses incurred by the partnership is also affirmed.  Costs of this Appeal shall be split between the appellant and the appellee.  For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded for recalculation of the value of the withdrawing partner's interest less the $20,000 going concern value as consistent with this order.


_____
DON R. ASH, SPECIAL JUDGE